FRANK P. GIONFRIDDO, ADMINISTRATOR (ESTATE OF KIM M. GIONFRIDDO) *v.* AVIS RENT A CAR SYSTEM, INC., ET AL.
(11543)

SPEZIALE, C. J., PETERS, PARSKEY, SHEA and MENT, Js.

Argued November 3, 1983—decision released February 21, 1984

*Thomas R. Newman,* of the New York bar, with whom were *John R. FitzGerald* and *William G. Ballaine,* for the appellants (named defendant et al.).

*Edward F. Hennessey,* with whom were *David T. Ryan* and, on the brief, *Thomas A. Young,* for the appellee (plaintiff).

PETERS, J. The principal issue in this case is the scope of our statutes imposing liability upon owner-lessors of motor vehicles for the misconduct of a driver-lessee. The plaintiff, Frank P. Gionfriddo, administrator of the estate of Kim Gionfriddo, brought an action in three counts against the defendants, Michael K. Gilliam, Avis Rent A Car System, Inc. (hereinafter Avis), and Chrysler Leasing Corporation (hereinafter Chrysler). The complaint sought: in the first count, compensatory damages; in the second count, exemplary damages; and in the third count, double or treble damages pursuant to General Statutes § 14-295.[1] The plaintiff successfully moved for summary judgment as to liability against all three defendants on the first count of the complaint. Thereafter, a jury assessed damages against all defendants on the first and second counts, and the trial court assessed damages on the third count. The defendant Gilliam has taken no appeal. The defendants Avis and Chrysler have appealed from that part of the judgment holding them liable on the third count, while the plaintiff has cross appealed the calculation of damages under the second and the third counts.

There is no present dispute about the underlying facts found in the trial court's opinion and the record as a whole. The defendants Avis and Chrysler rented a car to the defendant Gilliam on December 20, 1978. On January 4, 1979, Gilliam drove the rental car, while intoxicated, in a heinous, wilful and reckless manner, so as to strike head-on a car being driven by Kim Marie Gionfriddo, the plaintiff's decedent. Kim Gionfriddo died almost instantly.

---

[1] "[General Statutes] Sec. 14-295. DOUBLE OR TREBLE DAMAGES. Each person who, by neglecting to conform to any provision of sections 14-230 to 14-242, inclusive, or section 14-245, or 14-247, causes any injury to the person or property of another, shall be liable to the party injured in double or treble damages if, in the discretion of the court in which any action is pending, double or treble damages are just, with the costs of such action."

The plaintiff brought his action for damages against all three defendants. On the first count, seeking compensatory damages, the jury awarded him $353,262. On the second count, seeking exemplary damages, the jury awarded him $124,977, an amount calculated as one-third of the compensatory damages. The damages awarded by the jury have been paid in full.

At issue before us is the award of damages on the third count of the plaintiff's complaint, a count that was tried to the court, *N. O'Neill, J.* The court found that the plaintiff had established the factual and legal predicates for treble damages under General Statutes § 14-295, and assessed additional damages of $706,524 against all the defendants.[2] In trebling damages, the court took account of the compensatory damages awarded the plaintiff, but not of the exemplary damages.

The defendants Avis and Chrysler appeal the propriety of holding them liable for treble damages. The plaintiff, in his cross appeal, claims that the awards of exemplary and of punitive damages were improperly calculated. We will take up first the issues on the appeal and then those on the cross appeal.

I

The defendants Avis and Chrysler claim that it was error, for two reasons, to hold them liable for treble damages under the third count of the plaintiff's complaint. They do not challenge the trial court's finding of a factual predicate for invocation of the treble damages statute, General Statutes § 14-295. They argue, however, that they are not chargeable under § 14-295, as a matter of law, because treble damages are not permitted by either (1) the statute imposing liability upon owner-lessors of motor vehicles, General Statutes

[2] The trial court thus trebled the damages awarded by the jury by adding to the jury verdict an amount equal to twice the compensatory jury award.

§ 14-154a, or (2) the statute authorizing a wrongful death action, General Statutes § 52-555. We disagree with both of these arguments.

A

In order to determine whether the trial court properly held the defendants Avis and Chrysler liable for treble damages under § 14-154a, we must start with the text of that statute. It provides, in toto, that "[a]ny person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased, to the same extent as the operator would have been liable if he had also been the owner."

Although this court has not previously had the occasion to determine specifically whether § 14-154a imposes liability for treble damages, we have repeatedly stated our view of the purpose of the statute. " '[It] cannot be regarded otherwise than as an expression of legislative judgment as to the extent—beyond the limitations of the general principles of *respondeat superior* and the "family-car doctrine"—to which the owner of a motor vehicle which he entrusts to another should be liable for the acts of the latter.' *Marshall* v. *Fenton*, 107 Conn. 728, 731, 142 A. 403 [1928]." (Emphasis in original.) *Fisher* v. *Hodge*, 162 Conn. 363, 369, 294 A.2d 577 (1972). We have consistently construed the statute "as imposing on one who rents or leases a motor vehicle to another *the same liability as that of its operator*, provided the vehicle, at the time in question, is being operated by one in lawful possession of it pursuant to the terms of the contract of rental. *Levy* v. *Daniels' U-Drive Auto Renting Co.*, 108 Conn. 333, 336, 143 A. 163 [1928]; *Connelly* v. *Deconinck*, 113 Conn. 237, 240, 155 A. 231 [1931]; *Farm Bureau Mutual Automobile Ins. Co.* v. *Kohn Bros. Tobacco Co.*, 141 Conn. 539, 542, 107

A.2d 406 [1954]." (Emphasis added.) *Graham* v. *Wilkins*, 145 Conn. 34, 37, 138 A.2d 705 (1958). "[B]y virtue of the express terms of the statute the owner-lessor is made the alter ego of the operator so that the latter's acts with respect to the operation of the car . . . are in law the acts of the owner-lessor." Id., 41–42.

In light of our consistent construction of § 14-154a, under which the owner-lessor is viewed as the alter ego of the rental car's operator, it is logical to conclude, as the trial court held, that the damages recoverable under § 14-154a include treble damages, whenever treble damages are properly assessed against the operator. The defendant Gilliam's liability for treble damages is unchallenged.

To counter this logical construction, the defendants Avis and Chrysler offer a number of arguments for limiting the language of "any damage to any person or property" in § 14-154a to compensatory and exemplary damages. They urge that the statutory language should be read narrowly to exclude treble damages: (1) to conform to our decision in *Tedesco* v. *Maryland Casualty Co.*, 127 Conn. 533, 537–38, 18 A.2d 357 (1941), that an insurance company's vicarious liability is limited to compensatory damages; (2) to take account of the principle of *Maisenbacker* v. *Society Concordia*, 71 Conn. 369, 379–80, 42 A. 67 (1899), that there is no vicarious liability at common law for punitive or exemplary damages; (3) to harmonize our state law with the Restatement (Second) of Torts § 908 (1979) which limits a principal's vicarious liability for punitive damages assessed against an agent to specified circumstances, such as authorization or ratification; and (4) to follow decisions in other jurisdictions that interpret similar statutes to deny vicarious responsibility for punitive damages. We find none of these arguments persuasive.

The precedent established by *Tedesco* v. *Maryland Casualty Co.,* supra, does not inform the construction of § 14-154a because that case arose in a different factual and legal framework. In *Tedesco,* we were called upon to interpret a provision of an insurance policy under which its issuer agreed to pay "all sums which the insured shall become obligated to pay . . . for damages . . . because of bodily injury." Id., 535. We held that the injured plaintiff could not recover from the insurer a sum that was awarded, as multiple damages, against the offending driver. Id., 536–39. We noted that recovery of multiple damages, under the predecessor of General Statutes § 14-295, had penal as well as remedial aspects, but emphasized that, with respect to the offending driver, such a recovery "represents a sum the payment of which is imposed . . . as punishment for a violation of the statute which has the aspects of a wrong to the public rather than to the individual." Id., 537. We went on to conclude that, because multiple damages were imposed on account of a wrong to the public, it would be against public policy to permit the insured, the offending driver, to recover such a sum from the insurer, and therefore improper to regard the insurance policy's coverage of "damages . . . because of bodily injury" to include such a sum. Id., 537–38. Neither of the underlying reasons for the conclusion reached in *Tedesco* is applicable here. In our case, the issue is not one of shifting liability from Gilliam to Avis and Chrysler; nor are we interpreting language as confining as "damages . . . because of bodily injury."

There is, however, a more fundamental distinction between *Tedesco* and the case currently before us. *Tedesco* arose in the framework of a contractual dispute, in which general common law principles of public policy guided the interpretation of contractual language. We have the task today of applying the statu-

tory public policy embodied in § 14-154a. The legislature has determined that the owner or the lessor of a motor vehicle shall be liable "to the same extent as the operator would have been liable if he had also been the owner." One hundred years ago, in *Levick* v. *Norton*, 51 Conn. 461 (1884), we had before us a similar statute, requiring any driver who violated designated rules of the road to "pay to the person injured treble damages and costs; and . . . the owner of such vehicle shall, if the driver is unable to do so, pay the damages, to be recovered by writ of *scire facias.*" Id., 468. In *Levick* v. *Norton,* we allowed an injured person to recover treble damages from the owner because we regarded the statute as making the owner *equally* with the driver "the author of the injury," and imposing upon the owner "equal responsibility, a statutory suretyship for all resulting damage." Id., 469. The statute, we held, intentionally put the owner in the position which he would have occupied if he had expressly agreed to take the place of the driver as debtor for the injury, and "the liability of the latter should be the measure of his own." Id. The present § 14-154a, a lineal descendent of the statute in *Levick* v. *Norton,*[3] expressly makes owners and lessors liable "to the same

---

[3] The legislative roots of both General Statutes §§ 14-154a and 14-295 can be found in a statute enacted in 1797 known as "An Act to Regulate Stage and Other Carriage Drivers." The statute provided in § 2 for the imposition of treble damages for injuries caused by one in violation of certain rules of the road; and in § 4 made the owner of the vehicle liable if the driver could not pay. The statute before this court in *Levick* v. *Norton,* 51 Conn. 461 (1884), was substantially the same as the original act. The statute was retained without substantive change until 1905 when the legislature amended § 4 to limit owners' liability (1) to "actual" damages; and (2) to situations in which the driver was proved to be the owner's agent or the owner was proved negligent in his entrustment of the vehicle to the driver. The 1905 act further required the injured person to elect to proceed either against the owner for actual damages or against the driver for treble damages. Public Acts 1905, Ch. 216, § 4. The restrictive 1905 act was then repealed in 1921; Public Acts 1921, Ch. 334, § 26; and replaced in 1925 with a statute providing, in language similar to § 14-154a, that "[a]ny

extent as the operator[s]."[4] This legislative expression of public policy grounded in continued concern for safety of traffic upon the public highways; see *Levy* v. *Daniels' U-Drive Auto Renting Co.,* 108 Conn. 333, 336–37, 143 A. 163 (1928);[5] necessarily displaces and overrides common law presumptions about the relationship between insurer and insured, master and servant, employer and employee. As sureties under § 14-154a, the defendants Avis and Chrysler must pay for all damages, including treble damages, properly assessed against the defendant Gilliam.

Once it is recognized that the statutory mandate of § 14-154a imposes liability to a significantly greater extent than vicarious liability at common law, the other arguments offered by the defendants Avis and Chrysler concerning § 14-154a fall by the wayside. It is not relevant, in the light of an operative statute, that the common law was reluctant to impose liability upon employers for punitive damages assessed against employees; *Maisenbacker* v. *Society Concordia,* 71 Conn. 369, 379, 42 A. 67 (1899); or that the Restatement (Second) of Torts § 908 (1979) urges retention of common law constraints. Nor is it helpful that courts

person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased." Public Acts 1925, Ch. 195, § 21. In 1929, the legislature amended the statute by adding the final phrase, "to the same extent as the operator would have been liable if he had also been the owner." Public Acts 1929, Ch. 256. This language has been retained without change through repeated statutory revisions and is currently codified as § 14-154a.

[4] *Levick* v. *Norton,* 51 Conn. 461 (1884), construed a statute assigning special liability to an owner, while General Statutes § 14-154a covers both owners and lessors. We have been able to discern no reason of policy, nor have the defendants offered any, to distinguish between the liability of owners and of lessors.

[5] Although the defendants suggest obliquely that so broad an exercise of statutory power may give rise to constitutional concerns, they have not sufficiently articulated the nature of those concerns to warrant our consideration of this issue.

in other jurisdictions, whose statutes do not contain alter ego language, have concluded that vicarious liability does not extend to punitive damages.[6] Our statute is different, and it governs. Its broad reference to "any damage to any person or property" must be construed, in view of the statutory purpose of protecting the public from unsafe drivers, to include responsibility for any damages to person or property for which the offending driver is properly held liable.[7] As in other branches of the law where strict liability is imposed, the legislature is free to conclude that costs associated with rentals to unsafe drivers should be borne by the enterprise that affords such drivers access to the highways, without requiring the injured party to show the negligence of the enterprise itself. See *Garthwait* v. *Burgio,* 153 Conn. 284, 289–90, 216 A.2d 189 (1965), and General Statutes § 52-572m et seq.[8]

---

[6] In *Ingle* v. *Mark,* 58 Misc. 2d 895, 896, 296 N.Y.S.2d 664 (1969), a rental agency was held to have no responsibility for the lessee's wilful or wanton negligence under a statute; New York Veh. & Traf. Law § 388; imposing liability upon an owner for "death or injuries to person or property resulting from negligence in the use or operation of such vehicle." In *Allen* v. *Anderson,* 93 Nev. 204, 208–209, 562 P.2d 487 (1977), the statute that was narrowly construed involved the family car doctrine and not the liability of a commercial lessor of automobiles. In still other jurisdictions, vicarious liability has been limited to compensatory damages by reference to common law principles entirely unaffected by overriding statutes. See, e.g., *Waldron* v. *Kirkland,* 281 So. 2d 70, 71 (Fla. App. 1973); *Samedan Oil Corporation* v. *Neeld,* 91 N.M. 599, 601–602, 577 P.2d 1245 (1978); *Gray* v. *Allison Division,* 52 Ohio App. 2d 348, 354, 370 N.E.2d 747 (1977); *Campen* v. *Stone,* 635 P.2d 1121, 1125 (Wyo. 1981).

[7] The defendants themselves recognize that the fact that damages are denominated "punitive" does not automatically exclude them from the ambit of General Statutes § 14-154a, because they concede their statutory liability for exemplary damages. See *Collens* v. *New Canaan Water Co.,* 155 Conn. 477, 488, 234 A.2d 825 (1967); *Lanese* v. *Carlson,* 32 Conn. Sup. 163, 167, 344 A.2d 361 (1975). In *Alaimo* v. *Royer,* 188 Conn. 36, 42, 448 A.2d 207 (1982), we stated that "punitive damages" and "exemplary damages" are merely alternate labels for the same remedy, a remedy awarded only when the evidence shows reckless, intentional or wanton violation of the rights of others.

[8] The legislature is similarly free to conclude that the risks associated

We therefore conclude, on the first branch of the appeal of the defendants Avis and Chrysler, that they were correctly held liable, under § 14-154a, for those treble damages properly assessed against the defendant Gilliam. In imposing a statutory suretyship upon owners and lessors of motor vehicles, § 14-154a makes no distinction between compensatory, exemplary or treble damages.

### B

The alternative argument of the defendants Avis and Chrysler is that the terms of our wrongful death statute; General Statutes § 52-555;[9] preclude any assessment of treble damages against any of the defendants. They argue that the award of "just damages" under § 52-555 must necessarily be limited to compensatory and exemplary damages. We have not previously read our wrongful death statute so narrowly, and we decline to do so today.

This case furnishes our first opportunity to determine whether treble damages imposed under § 14-295 are recoverable under the wrongful death statute, § 52-555.[10] The defendants argue that damages of this

___

with unsafe driving on modern highways justify different legislative action than was appropriate in the horse-and-buggy circumstances of *Camp* v. *Rogers,* 44 Conn. 291 (1877), upon which the dissenting opinion relies.

[9] "[General Statutes] Sec. 52-555. ACTIONS FOR INJURIES RESULTING IN DEATH. In any action surviving to or brought by an executor or administrator for injuries resulting in death, whether instantaneous or otherwise, such executor or administrator may recover from the party legally at fault for such injuries just damages together with the cost of reasonably necessary medical, hospital and nursing services, and including funeral expenses, provided no action shall be brought to recover such damages and disbursements but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of."

[10] We have treated this issue as arising under the wrongful death statute because that is how the parties and the trial court characterized their claims at trial. *Birgel* v. *Heintz,* 163 Conn. 23, 25–26, 301 A.2d 249 (1972). The plaintiff, in this court, maintains that he intended instead to rely on

type cannot be considered "just" because they are essentially penal, while the plaintiff maintains that statutory multiple damages have remedial as well as punitive aspects. We are not persuaded that the diverse characterizations that have, from time to time, been attached to the treble damages statute shed any clear light on the proper interpretation of a different statute, the wrongful death statute.

It is more useful to focus on the interpretative principles that have been developed concerning the wrongful death statute itself. To determine the measure of "just damages," according to these principles, we must look to the underlying rights of the decedent, Kim Gionfriddo. Under our wrongful death statute, "the statutory right of action belongs, in effect, to the decedent, and to the decedent alone, and damages are recoverable 'for the death . . . as for one of the consequences of the wrong inflicted upon the decedent.' *Kling* v. *Torello,* [87 Conn. 301], 305, [87 A. 987 (1913)] . . . . '[T]he cause of action . . . [authorized by the statute] is a continuance of that which the decedent could have asserted had [she] lived' and to which death may be added as an element of damage. *Chase* v. *Fitzgerald,* 132 Conn. 461, 467, 45 A.2d 789 [1946]; *Floyd* v. *Fruit Industries, Inc.,* [144 Conn. 659, 668, 136 A.2d 918 (1957)]." *Foran* v. *Carangelo,* 153 Conn. 356, 360, 216 A.2d 638 (1966). See *Waldron* v. *Raccio,* 166 Conn. 608, 616, 353 A.2d 770 (1974).

It is uncontested, on the present record, that Kim Gionfriddo, had she lived, would have been entitled to

---

the survival of actions statute, General Statutes § 52-599. That argument comes too late. On the present state of the record, we therefore need not address whether the survival statute would have been a proper vehicle for recovery of damages in this case. We note, however, that the confusion about the basis for the plaintiff's cause of action could have been avoided had the complaint stated, as Practice Book § 109A requires, the statute upon which the complaint relied.

recover treble damages from Gilliam. By force of the provisions of § 14-154a, as we have held, supra, she could have recovered such damages against the other defendants as well. Under our wrongful death statute, the plaintiff, as administrator of her estate, has equal rights to recovery, because his rights are measured, and damages as to him are "just," when they comport with the rights of his decedent.[11] That some other jurisdictions have interpreted their wrongful death statutes differently does not warrant departure from our settled construction of § 52-555.[12]

We therefore conclude that the proper interpretation of our wrongful death statute permits recovery, as "just damages," of treble damages which the decedent might have recovered had she survived. Since the defendants have not challenged that the defendant Gilliam's conduct warranted the imposition of treble damages, and have not denied that such damages could have been awarded to Kim Gionfriddo herself, their appeal, on this ground, cannot prevail.

There is no error on the defendants' appeal.

---

[11] Even when our wrongful death statute contained a statutory cap on the amount of damages that were recoverable, that cap was held to constitute an over-all limitation that did not distinguish between the kinds of damages that were claimed. *Floyd* v. *Fruit Industries, Inc.,* 144 Conn. 659, 669, 136 A.2d 918 (1957).

[12] Although the defendants cite a number of out-of-state cases denying recovery of treble damages in wrongful death actions, many of those cases are distinguishable. The holding in *Rosenfeld* v. *Isaacs,* 79 App. Div. 2d 630, 630–32, 433 N.Y.S.2d 623 (1980), denying treble damages has subsequently been reversed by statutory amendment, as the defendants themselves note. In some of the western states, wrongful death statutes that had earlier provided broad authority for recovery of "pecuniary and exemplary" damages, have been subsequently restricted by legislative amendments. See *Downs* v. *Sulphur Springs Valley Electric Cooperative,* 80 Ariz. 286, 292, 297 P.2d 339 (1956); *Doak* v. *Superior Court,* 257 Cal. App. 2d 825, 836, 65 Cal. Rptr. 193 (1968). In *Eisert* v. *Greenberg Roofing & Sheet Metal Co.,* 314 N.W.2d 226, 228 (Minn. 1982), and *Wangen* v. *Ford Motor Co.,* 97 Wis. 2d 260, 312–13, 294 N.W.2d 437 (1980), the operative statutes expressly limit damages to pecuniary losses. Because any wrongful

## II

The plaintiff's cross appeal claims that the trial court made two errors that resulted in mistaken calculation of the damages that he was awarded. In the award of exemplary damages, under the second count, he claims that the trial court should have directed the jury to calculate exemplary damages as one-half of the compensatory damages under the first count. In the award of treble damages, he claims that the trial court should have included exemplary as well as compensatory damages in the amount that it trebled. We agree with neither of these claims.

### A

Proper resolution of the exemplary damages claim requires a review of discussions held between the parties, with the assistance of the trial court, in the absence of the jury, on April 21 and 22, 1982. At that time, the jury had before it the issue of compensatory damages under count one, the question of liability on that count having previously been determined by summary judgment, and the issue of liability and damages under count two seeking exemplary damages. In order further to limit the scope of the jury's inquiries on count two (and, in effect, on count one), all the defendants agreed to admit their liability for exemplary damages under count two, subject to the reservation that such damages were not, as a matter of law, recoverable under General Statutes §§ 14-154a and 52-555. The effect of these admissions, with respect to the second count, was that the jury's inquiry would be limited, in the view of the defendants, to ascertainment of the amount of the plaintiff's attorney's fees and his other costs. Repeat-

death action is a statutory one, the language of the particular statute is of special significance. "Apparently the case against arbitrary limits on recoveries in death actions has impressed legislatures, since a dwindling number of states now impose such limits." Dobbs, Remedies 567–68 (1973).

edly, in the discussion on April 21, 1982, the parties and the court indicated that, if the jury found that the plaintiff had attorney's fees of one-third of his judgment, then exemplary costs would require an added award of 50 percent. In subsequent conversations on April 22, 1982, however, after the trial court had decided to limit the scope of the jury's inquiry into the circumstances of the accident, the defendants stated that it was their contention that the jury should be permitted to determine the calculation of an attorney's fee of one-third.

At the trial with respect to exemplary damages, the plaintiff offered unchallenged evidence that his fee agreement was a one-third contingent fee. His expert witness testified that, to give full exemplary damages under the second count, an award of one-half of the damages assessed under the first count would be required. In their cross-examination of this witness, and in their closing argument, the defendants indicated no disagreement with the underlying fee arrangement but urged the jury to decide whether it called for an award of one-third or one-half of the first count. The trial court, despite a request from the plaintiff to charge that a calculation of one-half was required in order to arrive at a one-third fee, left the calculation to the jury. The court instructed the jury that it had only two choices. "You either use 50% of the compensatory damages or 33⅓ of the compensatory. It is your option. It is in your considered judgment to decide what the contract was between the parties. What did they agree to? Did they intend to come out with [the expert witness's] idea of 50% of the compensatory so that the estate gets the full amount of the compensatory; or did they figure that it would be one third of the compensatory." The plaintiff duly excepted. The jury returned an award on the second count equal to one-third of the amount assessed on the first count. The trial court denied the plaintiff's

subsequent motion to set this award aside and to recalculate it on the basis of one-half rather than one-third.

The plaintiff argues that the trial court's charge was in error for three reasons: the jury had no evidentiary basis for making a choice between the options presented to it; the court had no basis for deciding that the fee arrangement was ambiguous; and the jury had never heard evidence with respect to a claim of ambiguity in the fee arrangement. We find no error.

The plaintiff's basic claim is the first, that the jury, having not heard the horrendous circumstances surrounding the death of the decedent, were in no position to exercise the discretion normally afforded to it in the award of exemplary damages. All the parties are in agreement that the extent to which exemplary damages are to be awarded ordinarily rests in the discretion of the trier of the facts. *Chykirda* v. *Yanush,* 131 Conn. 565, 568, 41 A.2d 449 (1945); *Hanna* v. *Sweeney,* 78 Conn. 492, 494, 62 A. 785 (1906). This claim was not properly preserved. It should have been raised by making an evidentiary offer in the trial court and then appealing from the trial court's refusal to admit the proffered evidence. See *Rybinski* v. *State Employees' Retirement Commission,* 173 Conn. 462, 466, 378 A.2d 547 (1977).

The remaining claims of error on this issue are equally unpersuasive. Although the plaintiff intimates that calculation of the fee arrangement was the subject of a stipulation between the parties, the record reveals no such stipulation. On the contrary, the plaintiff himself expressly refused to enter into any stipulation concerning count two. To the extent that the early discussions about calculation led the plaintiff mistakenly to assume that the defendants would not contest a 50 percent calculation, the plaintiff learned that his assumption was inaccurate before the completion

of the voir dire, when the trial court stated that it would follow the course that it subsequently pursued. The plaintiff therefore had ample opportunity to introduce evidence to show that the fee agreement was not ambiguous. We are not prepared to hold, in the circumstances of this case, that the trial court's finding that the fee agreement was capable of more than one interpretation was clearly erroneous. In the absence of definitive contract language, the determination of what the parties intended their contractual commitments to encompass is a question of the intention of the parties and hence an inference of fact to be resolved by the trier of fact. *Monroe Ready Mix Concrete, Inc.* v. *Westcor Development Corporation,* 183 Conn. 348, 351–52, 439 A.2d 362 (1981); *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.,* 183 Conn. 266, 274–75, 439 A.2d 314 (1981).

## B

The plaintiff's second claim, on his cross appeal, contests the calculation of the treble damages under the third count of the complaint. The trial court trebled only the compensatory damages awarded under the first count and not the exemplary damages awarded under the second count. The plaintiff maintains that the trial court should have trebled the exemplary damages as well, or should have awarded such damages as costs, as § 14-295, in his view, authorizes.

In his challenge to the trial court's award, the plaintiff has taken insufficient account of the fact that § 14-295 affords him no absolute right to damages, but leaves the question of whether double or treble damages are "just" to "the discretion of the court." The only issue before us, on this appeal, therefore, is whether the trial court abused its discretion.

We have no grounds, on the present record, to conclude that there has been an abuse of discretion. The

trial court might reasonably have decided that, because treble damages and exemplary damages each arise out of findings of egregious misconduct, it would be inappropriate to treble more than the compensatory damages award. The trial court might have been influenced to use the lower base once it had decided to treble rather than to double the award of damages. Under either interpretation, the plaintiff has not demonstrated an abuse of discretion.

For similar reasons, we find no abuse of discretion in the failure to award exemplary damages as "the costs of such action." In general, a reference to "costs" does not encompass attorney's fees. The failure to award attorney's fees is not, per se, an abuse of discretion in light of the common law principle that, "absent contractual or statutory authorization, there can be no recovery, either as costs or damages, for the expenses of litigation or the expenditures for counsel fees by a party from his opponent." *Bross Line Construction Corporation* v. *Ryan Crane Service Corporation,* 32 Conn. Sup. 181, 182, 345 A.2d 594 (1975); *Peterson* v. *Norwalk,* 152 Conn. 77, 80, 203 A.2d 294 (1964). Without other reasons to conclude that the trial court abused its discretion, we find no error in its award of damages under the third count.

There is no error.

In this opinion SPEZIALE, C. J., PARSKEY and MENT, Js., concurred.

SHEA, J. (dissenting). I disagree with part I of the majority opinion which upholds the award of treble damages under General Statutes § 14-295 against the owner-lessors of the motor vehicle involved in the accident because of the misconduct of the driver-lessee. The statute must be read to authorize such enhanced lia-

bility only "if, in the discretion of the court in which [the] action is pending, double or treble damages are *just.*" (Emphasis added.)

To vindicate the justice of such an award in this case the opinion relies upon *Levick* v. *Norton,* 51 Conn. 461 (1884), where a judgment for treble damages against an owner of a vehicle whose servant violated a statutory predecessor of § 14-295 was affirmed. The statute before the court at that time[1] was mandatory in language and contained no prerequisite that such damages be "just," as does the present statute. In an earlier decision involving a livery stable owner who had rented a horse and carriage to a driver who caused a collision; *Camp* v. *Rogers,* 44 Conn. 291 (1877); the court had indicated that the statute imposing liability for treble damages on the "owner" of a vehicle involved in a collision would violate constitutional prohibitions against taking property without "due process of law" if applied to a lessor. Accordingly, the word "owner" in the statute was construed to mean "not the literal and technical owner, but the person in possession and control, either mediately or immediately, of the vehicle." Id., 298. This construction was followed in *Levick:* "The statute, regarding the master as having either with knowledge, or in ignorance, the result of gross and culpable negligence, sent the servant, and as being equally with him the author of the injury, imposes upon him

---

[1] General Statutes of 1875, Title 16, Ch. 7, Part I, § 21, as amended by Ch. 7 of the Public Acts of 1875 provided as follows:

"Every driver of any such vehicle, who shall, by neglecting to conform to the preceding section, drive against another vehicle and injure its owner or any person in it, or the property of any person, or shall negligently drive against and injure any person, or shall drive against any vehicle traveling the same course and injure any person or the horses or other property of any person, shall pay to the party injured treble damages and costs, and shall, if the injury is done designedly forfeit to the State not more than one hundred dollars; and the owner of such vehicle *shall,* if the driver is unable to do so, pay the damages provided in this and the preceding section, to be recovered by writ of scire facias." (Emphasis added.)

equal responsibility, a statutory suretyship for all result-
ing damages." *Levick* v. *Norton,* supra, 469. *Levick*
involved a master-servant relationship and the court
distinguished *Camp* on that ground: "As the driver in
this case was the servant of the defendant, and acting
at the time in his employment, no such question arises
as in the case of *Camp* v. *Rogers,* [supra], and our deci-
sion in this case is not to be holden as in any manner
qualifying that." *Levick* v. *Norton,* supra, 471. Curi-
ously, the majority relies upon a precedent which
expressly disclaims its applicability to the liability of
a lessor.

Although I have no quarrel with the justice of assess-
ing treble damages against the active wrongdoer, the
defendant Gilliam, as a punishment for his outrageous
conduct, I see no good reason to impose such a pen-
alty on the defendant owner-lessors of the car. As the
opinion recognizes, punitive damages could not be
imposed upon a party at common law merely on the
basis of vicarious liability. *Maisenbacker* v. *Society Con-
cordia,* 71 Conn. 369, 379, 42 A. 67 (1899). "As its agent
was acting within the scope of his employment, the law
compels the defendant to compensate the plaintiff for
the injuries she has sustained from the wrongful acts
of the agent, but it does not punish the defendant for
the malicious purpose or intent which prompted the
agent's conduct." Id. Modern authorities still deplore
the imposition of punishment in the form of damages
upon those who are only vicariously liable. 4 Restate-
ment (Second), Torts §§ 908, 909.

The opinion does not attempt to defend the wisdom
of subjecting the lessor to the same penalty which
is imposed on the driver for his extreme misconduct,
but maintains that the language of General Statutes
§ 14-154a compels such a result. The statutory provi-
sion limits the lessor's liability to "any damage to any
person or property caused by the operation of such

motor vehicle . . ." and does not allude to punitive damages. In the analogous situation of liability insurance coverage similar language has been construed not to allow the recovery of treble damages against the carrier. *Tedesco* v. *Maryland Casualty Co.,* 127 Conn. 533, 18 A.2d 357 (1941). Furthermore, the genealogy of § 14-154a indicates no intention on the part of the legislature to permit such a recovery against the lessor of a motor vehicle. Apparently in recognition of the unfairness of subjecting the owner as well as the driver to treble damages under the version of the statute considered in *Levick* v. *Norton,* supra, the legislature in 1905 amended it to limit the owner's liability to actual damages, while allowing the plaintiff an election to sue the driver for treble damages. When this statute was repealed in 1921, the statutory predecessor of § 14-295 was enacted which permitted the court to enhance the compensatory damages found by doubling or trebling them if such action "shall be just." Public Acts 1921, Ch. 334, § 6. The first enactment of the predecessor to § 14-154a in 1925 provided that "[a]ny person renting or leasing to another any motor vehicle used by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased." Public Acts 1925, Ch. 195, § 21. This statute could have been construed so broadly as to impose absolute liability upon the lessor of a vehicle involved in a collision, regardless of whether the operator was at fault and regardless of the contributing fault of other parties. This possible interpretation of the statute was corrected by the 1929 amendment which added the clause, "to the same extent as the operator would have been liable if he had also been the owner." Public Acts 1929, Ch. 256, § 1. It is quite likely that this amendment was intended only to narrow the scope of the liability of a lessor for compensatory damages created in 1925 to correspond with that of a driver. There is certainly no indication that the legislature

intended to revive the notion of imposing liability for treble damages upon a person who was not an active wrongdoer, which had been abandoned in 1905 and which this court had found violative of "due process of law" in *Camp* v. *Rogers,* supra, 297–98.