[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 5864
PROCEDURAL HISTORY
This case arises from the defendant's (Markel Insurance Company) denial of the plaintiffs (Camp Delaware) claim for coverage under a comprehensive commercial general liability and business loss policy issued by the defendant to the plaintiff. The incident at issue occurred on July 6, 1997, when a back-up of sewage caused the damage that was the basis of it's claim. The defendant denied the claim based on its determination that the property damage that was incurred due to the sewage backup was not a covered occurrence because the policy excludes coverage for damage caused by (1) "water that backs up from a drain or sewer" or (2) damage caused by "pollutants" because sewage is a pollutant. The plaintiff subsequently commenced this action and now before the court is the defendant's motion for summary judgment.
STANDARD FOR SUMMARY JUDGMENT
Summary judgment must be granted if the pleadings, affidavits, and other documentary proof show that there is no genuine issue to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 17-49; Alvarez v. New Haven Register,Inc., 249 Conn. 709, 714 (1999); Orkney v. Hanover Ins. Co., 248 Conn. 195,201 (1999); Rivera v. Double A Transportation, Inc., 248 Conn. 21, 24
(1999). A "material" fact is one which will make a difference in the outcome of the case. Morascini v. Commissioner of Public Safety,236 Conn. 781, 808 (1996). In ruling upon a summary judgment motion, the court merely determines whether an issue of fact exists, but does not try the issue if it does exist. Michaud v. Gurney, 168 Conn. 431, 433
(1975).
The purpose of summary judgment is to eliminate the delay and expense accompanying a trial where there is no real issue to be tried. Dowlingv. Kielak, 160 Conn. 14, 16 (1970); Dorazio v. M.B. Foster ElectronicCo., 157 Conn. 226, 228 (1968). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Connecticut Bank Trust Co. v.Carriage Lane Associates, 219 Conn. 772, 781 (1991).
DISCUSSION
The defendant argues that the damage was excluded by the water damage exclusion or the pollution exclusion of the insurance policy. The exclusions upon which the defendant relies provide that the insurer "will CT Page 5865 not pay for loss or damage caused directly or indirectly by . . . [w]ater that backs up or overflows from a sewer, drain or sump . . . [or] [d]ischarge, dispersal, seepage, migration, release or escape of "pollutants' unless the discharge, disposal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss'." (Causes of Loss-Special Form at 1, 2, 3.) The policy does not define the term water. Pollutants are defined to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." (Building and Personal Property Coverage Form § H (1) at 10.)
There appears to be no Connecticut case law determinative of whether sewage is "water" or a "pollutant" under the policy exclusions set forth above. The plaintiff and defendant have cited cases from various jurisdictions to support their respective positions.
"The question of whether an insurer has a duty to defend and/or indemnify an action brought against its insured requires analysis of the allegations in the complaint filed against the insured and a determination of whether the complaint states facts which appear to bring the alleged injury within the coverage of the policy issued. . . . In undertaking the required analysis, it is the court's responsibility to review the provisions of the insurance contract at issue. . . . Where the terms of a policy are "clear and unambiguous', there is no room for construction. . . . A contract of insurance "must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy.' . . . A court should avoid ingenious readings of contractual language and microscopic analysis to conjure up ambiguities where none exist. A certain unavoidable degree of ambiguity is inherent in almost all contractual provisions, indeed, all language. In evaluating the intentions of the parties as expressed in the language used in a contractual provision, the focus is not simply on whether more precise language could have been used, but whether the language that was used is ambiguous when fairly read." (Citations omitted.) Peerless Ins.Co. v. Gonzalez, Superior Court, judicial district of Hartford, Docket No. 553119 (September 4, 1996, Lavine, J.) (17 Conn.L.Rptr. 530).
"A court will not torture words to import ambiguity where the ordinarymeaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings." (Emphasis added; internal quotation marks omitted.) Schultz v. HartfordFire Ins. Co., 213 Conn. 696, 703 (1990).
"Although ordinarily the question of contractual intent presents a question of fact for the ultimate fact finder, where the language is CT Page 5866 clear and unambiguous it becomes a question of law for the court. . . . When the plain meaning and intent of the language is clear, a clause . . . cannot be enlarged by construction. There is no room for construction where the terms of a writing are plain and unambiguous, and it is to be given effect according to its language." Rapaport Benedict, P.C. v.Stamford, 39 Conn. App. 492, 499 (1995); see also Hammer v. Lumberman'sMutual Casualty Co., 214 Conn. 573, 583 (1990) ("if the words in the policy are plain and unambiguous the established rules for the construction of contracts apply, the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties").
The "basic principle of insurance law [is] that policy language will be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters, and that ambiguities in contract documents are resolved against the party responsible for its drafting; the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view . . . The premise behind the rules is simple. The party who actually does the writing of an instrument will presumably be guided by his own interests and goals in the transaction. He may choose shadings of expression, words more specific or more imprecise, according to the dictates of these interests. . . . A further, related rationale for the rule is that [s]ince one who speaks or writes, can by exactness of expression more easily prevent mistakes in meaning, than one with whom he is dealing, doubts arising from ambiguity are resolved in favor of the latter."O'Brien v. United States Fidelity Guaranty Co., 235 Conn. 837, 843
(1996); see also Stephan v. Pennsylvania General Insurance Co.,224 Conn. 758, 763 (1993) ("under well established rules of construction, any ambiguity in the terms of an insurance policy must be considered in favor of the insured because the insurance company drafted the policy").
"In light of these important general considerations, courts have traditionally, and with extremely good reason, disfavored policy exclusions. Where particular provisions, if read literally, would largely nullify the insurance, they will be severely restricted so as to enable fair fulfillment of the stated policy objective. . . . Under familiar rules of construction, any uncertainties in an insurance policy will be resolved in favor of imposing liability. This is particularly so in the case of exclusions, since the burden rests on the insurer to phrase exceptions and exclusions in clear and unmistakable language. . . . [E]xceptions from coverage are to be strictly construed against the insurer when their application is doubtful. Peerless Insurance Co. v.CT Page 5867Gonzalez, supra, 17 Conn.L.Rptr. 530.
"[A] court can find ambiguities in contract language only where a reasonable reading of the language at issue discloses ambiguity. General language can almost always be made more specific. An insurance policy is to be interpreted by the same general rules that the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy . . . The policy words must be accorded their natural and ordinary meaning . . ." Id.
POLICY EXCLUSIONS
In pleading its special defense, the defendant has put at issue the policy exclusions and limitations and, in doing so, assumed the burden of proving applicability of at least one exclusion in order to justify its denial of coverage. The two insurance policy exclusions that have been specifically raised are the water damage exclusion and the pollution exclusion.
"[T]he burden of proving an exception to a risk is on the insurer. . . . The object of an exception is to exclude that which would otherwise be included, to take special cases out of a general class. . . . By `exception' of course is mean an exclusion of one or more of the risks otherwise generally insured against. . . ." (Citations omitted; internal quotation marks omitted.) Young v.American Fidelity Ins. Co., 2 Conn. App. 282, 285-86
(1984).
Thus, "when an exclusion clause is relied upon to deny coverage, the insurer has the burden of demonstrating that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and further, that the allegations in toto, are subject to noother interpretation." (Emphasis added.) R.E.O., Inc. v. The TravelersCompanies, Superior Court, judicial district of New Haven at New Haven, Docket No. 372522 (May 20, 1998, Silbert, J.).
THE WATER DAMAGE EXCLUSION
If definitive language is absent in the contract, "the determination of what the parties intended their contractual commitments to encompass is a question of the intention of the parties and hence an inference of fact to be resolved by the trier of fact." Gionfriddo v. Avis Rent A CarSystem, Inc., 192 Conn. 280, 296 (1984). "Furthermore, where the court finds that particular language in the policy is ambiguous or is susceptible of at least two fairly reasonable interpretations, this CT Page 5868 finding would present a triable issue of fact rendering summary judgment improper." Piccirillo v. Sawala, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 239566 (November 7, 1990, Jones,J.), citing Jurrius v. Maccabees Mutual Ins. Co., 587 F. Sup. 1301, 1305
(1984). Only if the language is clear and unambiguous is there a question of law which the court may decide [as to the application of] . . . policy exclusions. Id.
Because the court finds that the policy terms are ambiguous as to whether raw sewage is intended under the policy to be included in the term "water" and furthermore whether the "damage" claimed by the plaintiff was caused by the "water" or the raw sewage, the granting of summary judgment would be inappropriate as to this issue.
THE POLLUTION EXCLUSION
The defendant asserts in its motion for summary judgment that sewage is a pollutant as that term is defined in the policy exclusion.
The exclusion clause at issue here specifies that the term "[pollutant] means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." (Building and Personal Property Coverage Form § H (1) at 10.)
"The plain language of the absolute pollution exclusion clause therefore makes clear that a liquid is an excluded "pollutant' if it may be characterized as an `irritant' or `contaminant.' The dictionary defines `contaminant' as `something that contaminates,' and it defines `contaminate' as `to soil, stain, corrupt, or infect by contact or association' or `to render unfit for use by the introduction of unwholesome or undesirable elements.' . . . Similarly, the dictionary defines `pollutant' as `something that pollutes . . . a polluting substance, medium, or agent,' and it defines `pollute' as `to . . . impair the purity of . . . to make physically impure or unclean.'" (Citations omitted.) Heyman Associates No. 1 v. Ins. Co. ofPennsylvania, 231 Conn. 756, 772, 653 A.2d 122 (1995). In addition the pollution exclusion does not apply (an exception to the exclusion) if "the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the `specified causes of loss,' which causes of loss include "water damage". (Causes of Loss Special Form § F (3) at 7.)
"[The] most logical way to treat an exception to an exclusion is to assign the burden of disproving it to the insurer, as part and parcel of its overall burden of demonstrating the applicability of the exclusion to CT Page 5869 the insured's claim. This conclusion is consistent with Connecticut's strong presumption in favor of insurance coverage, including, particularly, the right policyholders to the defense of claims which "fall even possibly within the coverage' of their insurance policies. Because a [policyholder] . . . claim may assert facts concerning the applicability of an exclusion without stating facts showing the applicability of an exception to that exclusion, the denial of a [claim] based solely upon the text of the silent complaint would deprive the insured of a right he paid for under his insurance policy." Cole v. East Hartford EstatesLimited Partnership, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 547179 (May 16, 1996, Sheldon, J.).
Applying the above reasoning to the facts of this case, the conclusion is unavoidable that the defendant's motion for summary judgment based on the pollution exclusion must be denied for several reasons. First, the plaintiff's underlying complaint against the defendant describes damage of the sort that falls within the scope of policy coverage. The plaintiff is thus entitled to coverage unless the remaining allegations of the complaint conclusively establish that those damages are removed from coverage by a policy exclusion. The exclusion here claimed to be applicable is the pollution exclusion. Because the cause of the plaintiff's damages is clearly the discharge and dispersal of a pollutant (raw sewage) the damages may well be excluded from coverage under the policy. Where, however, the exclusion claimed to defeat coverage contains an exception and the continuing possibility of coverage based on the applicability of the exception exists, there is an issue yet to be determined.
Second, the parties are at issue as to whether sewage is a pollutant within the meaning of the policy exclusion as written. Neither party has submitted independent or documentary proof to exclude any doubt as to the meaning of the term. Therefore, the defendant's reliance on the plain meaning of the language is insufficient to prove that no genuine issue of material fact exists as to the definition of the term pollutant as written in the policy.
Finally, the court finds that the reasonable expectations of the parties as to what they collectively intended to encompass in their contractual commitments is a material question of fact that is at issue in this case.
Based on the foregoing discussion, granting of summary judgment would be inappropriate. Therefore the motion for summary judgment is denied.
Cremins, J. CT Page 5870