[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM ORDER RE DEFENDANTS' MOTION TO STRIKE
Upon considering all materials submitted by the parties in support of and in opposition to the defendants' Motion to Strike dated December 16, 2002, the Court hereby finds, for the following reasons, that said Motion must be DENIED with respect to Count Four but GRANTED with respect to Counts Five and Six of the plaintiff's Complaint:
In this case, plaintiff Dolores R. Swetzes seeks to recover money damages from defendants Tyson J. Burk ("Tyson Burk"), Joan Muldoon Burk ("Joan Burk") and Joseph Muldoon Burk ("Joseph Burk") in connection with an automobile accident that took place in Simsbury, Connecticut on October 25, 2000. According to the plaintiff's six-count Complaint dated October 15, 2002, the accident resulted from the tortious conduct of defendant Tyson Burk in the operation of a 1990 Volvo station wagon which he was then driving with the permission of its owners, defendants Joan and Joseph Burk. The Complaint does not specify the relationship, if any, between Tyson Burk and either of his co-defendants.
In Count One of the Complaint, the plaintiff claims that defendant Tyson Burk was negligent in the operation of his co-defendants' vehicle in eleven specific ways, and that, by such negligence, he proximately caused her to suffer certain serious injuries, resulting financial losses, and limitations upon her life's activities. On the basis of these allegations, the plaintiff seeks to recover compensatory damages from Tyson Burk.
In Counts Two and Three of the Complaint, which are directed to defendants Joan and Joseph Burk, respectively, the plaintiff repleads all the allegations of her first count, then claims, without more, that
8. Pursuant to C.G.S. § 52-182, the defendant [to whom the Count is directed] . . . is liable for injuries, damages, or losses sustained by the plaintiff as a result of the negligence of the defendant, Tyson J. Burk. CT Page 2830
Complaint, Count II, ¶ 8 (as to defendant Joan Burk); Count III, ¶ 8 (as to defendant Joseph Burk). By so pleading, the plaintiff expressly seeks to recover compensatory damages from Joan and Joseph Burk by establishing their vicarious liability for Tyson Burk's alleged negligence under General Statutes § 52-182, Connecticut's Family Car Statute.[1]
In Count Four of the Complaint, the plaintiff seeks to recover double or treble damages from defendant Tyson Burk under General Statutes § 14-295.[2] To that end, the plaintiff alleges, more particularly, that her injuries and losses
4 . . . were caused by the defendant, Tyson J. Burk who deliberately or with reckless disregard operated his motor vehicle in one or more of the following ways, which were a substantial factor in causing the plaintiff's injuries and losses, in that
a) he operated his vehicle at a greater speed than was reasonable, having regard to the width, traffic and use of the road, in violation of C.G.S. § 14-218a,
b) he operated his vehicle recklessly, having regard to the width, traffic and use of the road, in violation of C.G.S. § 14-222.
Complaint, Count IV, ¶ 4.
Finally, in Counts Five and Six of the Complaint, the plaintiff seeks to recover double or treble damages from defendants Joan and Joseph Burk, respectively, by establishing their vicarious liability for defendant Tyson Burk's alleged violation of General Statutes § 14-295. To that end, the plaintiff repleads all the allegations of her fourth count, then claims, without more, that
8. Pursuant to C.G.S. § 52-182, the defendant [to whom the Count is directed] . . . is liable for injuries, damages, or losses sustained by the plaintiff as a result of the conduct of the defendant, Tyson J. Burk.
Complaint, Count V, ¶ 8 (as to defendant Joan Burk); Count VI, ¶ 8 (as to defendant Joseph Burk). By so pleading, the plaintiff attempts, here as in Counts Two and Three, to base her claims of vicarious liability against these defendants on the Family Car Statute.
The defendants have moved this Court, under Practice Book § 10-39, CT Page 2831 to strike Counts Four, Five and Six on two separate grounds. First, they claim that all three challenged Counts must be stricken because the "[a]llegations of unreasonable speed and failure to obey a control signal[3] are legally insufficient to constitute recklessness;" Motion to Strike, p. 1; as assertedly must be pleaded to state a viable claim for double or treble damages under General Statutes § 14-295. Second, they claim that Counts Five and Six must be stricken for the further reason that "[v]ehicle ownership is a legally insufficient basis to impose liability for multiple damages under [General Statutes §] 114-295." Motion to Strike, p. 1.
 I
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any [complaint] . . . to state a claim upon which relief can be granted . . ." Peter-Michael, Inc. v. Sea ShellAssociates, 244 Conn. 269, 270-71, 709 A.2d 558 (1998). In deciding a motion to strike, the court must "take the facts to be those alleged in the complaint . . . and . . . construe the complaint in the manner most favorable to sustaining its legal sufficiency . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted.) Gazo v. Stamford,255 Conn. 245, 260, 765 A.2d 505 (2001). "It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted . . . Indeed, pleadings must be construed broadly and realistically, rather than narrowly and technically." (Citations omitted.) Id.
 II
In Armstrong v. Smith, Superior Court, judicial district of Hartford/New Britain at Hartford, No. CV 94-0533947 (Dec. 2, 1994, Sheldon, J.) (13 Conn.L.Rptr. 120), the undersigned entered into the ongoing debate among Superior Court judges as to whether the specificity required to plead a claim of common-law recklessness is also required to plead a violation of General Statutes § 14-295. Taking what has since become the majority view on that issue — an issue that has yet to be resolved by our Supreme or Appellate Court — I concluded then, as I do now, that a plaintiff sufficiently pleads a violation of Section 14-295 by simply alleging its statutory elements, to wit: that the defendant committed one or more of the serious motor vehicle violations set forth in the statute, that he did so either deliberately or with reckless disregard of the rights of others, and that said violation, so deliberately or recklessly committed, was a substantial factor in CT Page 2832 bringing his complained-of injuries and losses about.
Assessed by that standard, the challenged Counts are legally sufficient to state valid claims for relief under Section 14-295 for the following reasons. Each Count is based upon the alleged commission of two serious motor vehicle violations listed in the statute — operating at an unreasonable speed, in violation of General Statutes § 14-218a, and reckless driving, in violation of General Statutes § 14-222. Each such violation is alleged to have been committed deliberately and/or with reckless disregard for the rights of others. Finally, each such deliberate or reckless violation is claimed to have been a substantial factor in causing the plaintiff's alleged injuries and losses. Accordingly, the defendants' initial challenge to the Fourth, Fifth and Sixth Counts of the plaintiff's Complaint must be rejected, and their Motion to Strike with respect to the Fourth Count, which is based only on that challenge, must be DENIED.
 III
In support of their second argument — that Counts Five and Six of the Complaint must be stricken because "vehicle ownership is a legally insufficient basis to impose liability for multiple damages under [General Statutes §] 114-295" — the defendants rely upon the common-law principle, articulated in Maisenbacker v. Society Concordia,71 Conn. 369, 379-80, 42 A. 67 (1899), that there is no vicarious liability for punitive or exemplary damages at common law. Arguing that the rule set forth in the Family Car Statute has common-law origins, but that there is no language in that Statute in derogation of common law, the defendants insist that the Statute must be read not to abrogate theMaisenbacker principle.
The plaintiff bases her opposition to this aspect of the defendants' Motion to Strike on the holding of our Supreme Court in Gionfriddo v.Avis Rent-A-Car Systems, Inc., 192 Conn. 280, 472 A.2d 306 (1984). InGionfriddo, the Court upheld a plaintiff's claim of vicarious liability for multiple damages under Section 14-295 against the owner-lessor of a rented vehicle by finding a legislative intent to impose such liability under General Statutes § 14-154a. Then, as now, Section 14-154a
provided as follows:
Any person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased, to the same extent as the operator would have been liable if he had also been the owner. CT Page 2833
Reading that language in light of the statute's long-established purpose — which is to make the owner-lessors of motor vehicles liable for the acts of those to whom they entrust their vehicles — the Gionfriddo Court explained its finding of vicarious liability in the following terms:
Although this court has not previously had the occasion to determine specifically whether 14-154a imposes liability for treble damages, we have repeatedly stated our view of the purpose of the statute. "`[It] cannot be regarded otherwise than as an expression of legislative judgment as to the extent beyond the limitations of the general principles of respondeatsuperior and the "family-car doctrine" — to which the owner of a motor vehicle which he entrusts to another should be liable for the acts of the latter.' Marshall v. Fenton, 107 Conn. 728, 731, 142 A. 403
[1928]." (Emphasis in original.) Fisher v. Hodge, 162 Conn. 363, 369,294 A.2d 577 (1972). We have consistently construed the statute "as imposing on one who rents or leases a motor vehicle to another the same liability as that of its operator, provided the vehicle, at the time in question, is being operated by one in lawful possession of it pursuant to the terms of the contract of rental. Levy v. Daniels' U-Drive AutoRenting Co., 108 Conn. 333, 336, 143 A. 163 [1928]; Connelly v.Deconinck, 113 Conn. 237, 240, 155 A. 231 [1931]; Farm Bureau MutualAutomobile Ins. Co. v. Kohn Bros. Tobacco Co., 141 Conn. 539, 542,107 A.2d 406 [1954]." (Emphasis added.) Graham v. Wilkins, 145 Conn. 34,37, 138 A.2d 705 (1958). "[B]y virtue of the express terms of the statute the owner lessor is made the alter ego of the operator so that the latter's acts with respect to the operation of the car . . . are in law the acts of the owner-lessor." Id. 41-42.
In light of our consistent construction of 14-154a, under which the owner-lessor is viewed as the alter ego of the rental car's operator, it is logical to conclude, as the trial court held, that the damages recoverable under 14-154a include treble damages, whenever treble damages are properly assessed against the operator.
Gionfriddo, supra, 192 Conn. at 284-85.
Against the background of the foregoing analysis, the plaintiff's claimed reliance upon the Supreme Court's decision in Gionfriddo is curious at best. Far from supporting the plaintiff's claim that the Family Car Statute should be read to impose vicarious liability for statutory multiple damages upon the non-operator-owner of a family car, the Gionfriddo decision undermines that decision in two important ways. CT Page 2834
First, the decision relies expressly upon statutory language not appearing in the Family Car Statute which equates the liability of an owner or lessor of a leased or rented vehicle to that of the operator of that vehicle. Though the Family Car Statute creates a rebuttable presumption that a vehicle operated by the owner's spouse or child is being driven as a family car, within the scope of a general authority from the owner to put it to that use, the Statute does not address the scope of the owner's civil liability, if any, for such authorized operation, much less equate the owner's liability to that of the authorized operator. Since the statutory language which established such parallel or alter ego liability was critical to the Gionfriddo Court's analysis of Section 14-154a, its absence from the Family Car Statute should be no less critical to this Court's analysis of that statute.
Second, the Gionfriddo decision expressly notes that the extent of liability imposed upon owners and lessors of leased and rented vehicles under Section 14-154a goes "beyond," and thus obviously is greater than, that arising under "the general principles of respondeat superior and the `family car doctrine.'" Gionfriddo, supra, 192 Conn. at 284 (quotingMarshall v. Fenton, 107 Conn. 728, 731, 142 A. 403 (1928)). This passage suggests, and rightly so, that the family car doctrine, like the rule ofrespondeat superior, is a creature of the common law, not a statutory rule passed in derogation of common law. So understood by the Court inGionfriddo, the family car doctrine, as embodied in Section 52-182, can hardly be claimed to have abrogated the common-law principle that there is no vicarious liability for punitive or exemplary damages.
In fact, the common-law roots of the family car doctrine in Connecticut were well established long before the Supreme Court issued its decision in Gionfriddo. The doctrine was first adopted in the case of Wolf v.Sulik, 93 Conn. 431, 106 A. 443 (1919), where the Court was asked to read it into a 1905 statute that provided in part as follows:
If the owner . . . of any vehicle, shall entrust such . . . vehicle to his agent, bailee, servant or employee, to be . . . driven or operated by such agent, bailee, servant or employee upon the public highways . . . and such agent, bailee, servant or employee, while in the performance of such owner's business within the scope of his authority, . . ., shall, by neglecting to conform to any provision of sections 1568 or 1569, cause any injury to the person or property of another, such owner shall pay to the party injured his actual damages and costs.
Id. at 433 (quoting General Statutes § 1572). (Emphasis added). Drawing upon common-law precedents from other jurisdictions, the Wolf
Court agreed that under that statute, the owner of a family car should be CT Page 2835 held responsible for the negligence of a close family member who operates the vehicle as a family car, under a general grant of authority from the owner to do so. Its rationale for this ruling was explained as follows:
This question of the responsibility of owners of pleasure cars maintained for the use and convenience of members of the owner's family, has been the subject of considerable litigation in recent years. The cases on the subject are collected and reviewed in the note to Birch v.Abercrombie, 50 L.R.A. (N.S.) 59 (74 Wash. 486, 133 P. 1020), and in the note to McNeal v. McKain 41 L.R.A. (N.S.) 775 (33 Okla. 449, 126 P. 742). We need not refer to them in detail, because our decision must be controlled by the statute. It is enough to say that while there is someconflict of opinion, the increasing weight of authority seems to be thatwhen a motor-car is maintained by the pater-familias for the general useand convenience of his family, he is liable for the negligence of amember of the family having general authority to drive it, while the caris being used as a family car. Smith v. Jordan, 211 Mass. 269, 97 N.E. 761;Daily v. Maxwell 152 Mo. App. 415, 133 S.W. 351; Stowe v. Morris,147 Ky. 386, 144 S.W. 52; McNeal v. McKain 33 Okla. 449, 126 P. 742; and other cases in the notes above referred to. The inherent justice of the rule thus stated is apparent, and the chief reason why some courts have declined to follow it, is because, on the facts of the case, they could not spell out the relation of master and servant, which at the common law must necessarily be established before the rule respondeat superior
becomes applicable at all. See for example Doran v. Thomsen, 76 N.J.L. 754,71 A. 296. On this record that difficulty does not exist, for within the limited class of bailments to which it relates, the statute expressly applies the rule to bailors as well as masters.
We think this case falls within the reason as well as the letter of the statute. The difficulty of formulating any satisfactory explanation for all of the recognized applications of the rule respondeat superior is well understood, but it is generally accepted as a necessary rule of public policy and social justice. Under an older and simpler economic system, the rule was restricted in its application to the relation of master and servant, and in its origin that relation rested on the right of one man to control the conduct of another. But theoretically as well as practically, the master's responsibility for the negligence of his servant extends far beyond his actual or possible control over the conduct of the servant. It rests on the broader ground that every man who prefers to manage his affairs through others, remains bound to so manage them that third persons are not injured by any breach of legal duty on the part of such others while they are engaged upon his business and within the scope of their authority. CT Page 2836
Wolf v. Sulik, supra, 93 Conn. at 436-37. (Emphasis added.)
Four years later, following the repeal of the statute it had interpreted in Wolf, the Supreme Court made the family car doctrine a part of Connecticut common law in Stickney v. Epstein, 100 Conn. 170,123 A. 1 (1923). There, after quoting at length from its Wolf decision, the Supreme Court used it as follows to extend the common-law rule ofrespondeat superior:
We . . . said [in Wolf], in effect, that at common law, while there is a conflict of authority, the weight of authority seems to be that when a motor-car is maintained by the paterfamilias for the general use and convenience of his family, he is liable for the negligence of a member of the family having general authority to drive it, while the car is being used as a family car, and that the inherent justice of the rule thus stated is apparent. The rule rests on the broad ground that every man who prefers to manage his affairs through others, remains bound to so manage them that third persons are not injured by any breach of legal duty on the part of such others while they are engaged upon his affairs and within the scope of their authority. In that opinion we intended to sanction the claim that at common law when a paterfamilias maintains an automobile for the pleasure, use and convenience of his family and in pursuance of such purpose authorizes members of his family to use it for such purpose, he by so doing makes such pleasure uses his affair, and constitutes members of the family so operating the car his agents engaged in the prosecution of his affairs. We are satisfied that the same rules of public policy and social justice which entailed former extended applications of the rule respondeat superior to new situations at common law, still apply, and entail its application to the situation presented in this case.
Stickney, supra, 100 Conn. at 179. "The rule thus formulated[,]" the Court observed four years later, "was a logical outgrowth of the common law principle of respondeat superior, and adopted in support of a sound and just public policy, in view of existing conditions." O'Keefe v.Fitzgerald, 106 Conn. 294, 298, 137 A. 858 (1927).
Finally, in 1931, the legislature expressly reincorporated the common-law family car doctrine into Connecticut statutory law by passing the predecessor to our current Family Car Statute, now codified at General Statutes § 52-182. That Statute, as described by Wright and FitzGerald in their Connecticut Law of Torts, 2nd edition,
is in effect a restatement of a common law rule established by the courts to the effect that where an automobile is maintained for the CT Page 2837 general use of the family, the owner of the vehicle is vicariously liable for injuries or property damage caused by a member of the family operating the car. In order for the doctrine to operate, the operator of the car must have "general authority" to operate the vehicle; and if the operator only had special permission to drive the car, the doctrine has been held not to apply.
Id. at 122-23.
On the basis of the foregoing authorities, this Court concludes that the Family Car Statute does not impose vicarious liability for statutory double and treble damages under General Statutes § 14-295 upon the non-operator owners of family cars. Such a reading would be inconsistent with the language of the statute, which unlike Section 14-154a, does not purport to make non-operator owners the alter egos of family members who operate their vehicles as family cars. It would also be inconsistent with Connecticut common law, whose principles clearly govern claims brought under the family car doctrine in this State. Accordingly, the Fifth and Sixth Counts of the plaintiff's Complaint must be stricken for failure to state claims upon which relief can be granted.
 CONCLUSION
For all of the foregoing reasons, the defendants' Motion to Strike must be DENIED with respect to Count Four of the plaintiff's Complaint, but must be GRANTED with respect to Counts Five and Six.
IT IS SO ORDERED this 24th day of February 2003.
Michael R. Sheldon, J.