Maisenbacker *v.* Society Concordia.

BERTHA M. MAISENBACKER *vs.* THE SOCIETY CONCORDIA.

Third Judicial District, Bridgeport, Oct. Term, 1898.   ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, JS.

Although the principal is answerable in compensatory damages for the wrongful act of his agent within the scope of his employment, he is not to be punished, by holding him liable for vindictive or exemplary damages, merely because the agent's misconduct was wanton or malicious; unless, indeed, the principal authorized or ratified such conduct.

In this State the amount of punitive damages which may be awarded the plaintiff in a proper case, is measured by and limited to the expenses of litigation, less the taxable costs.

The plaintiff sought to recover damages for an assault claimed to have been wantonly and maliciously committed by the defendant's floor manager, in forcibly preventing her from dancing at a public ball given by the defendant, and for admission to which she had paid the required fee, upon the ground that she was not a fit person to be there.   *Held* that inasmuch as it did not appear from the record that the defendant in any way participated in or ratified the alleged malicious assault of its floor manager, the trial court erred in charging the jury that they might, if they found this issue for the plaintiff, include in their verdict, as punitive damages, the expenses of the trial in excess of the plaintiff's taxable costs.

Several causes of action may be stated in one count, when such causes are not separate and distinct; that is, are not separable from each other by some distinct line of demarcation.

Argued October 28th, 1898—decided January 4th, 1899.

ACTION to recover damages for assault and battery and for the wrongful ejection of the plaintiff from a dance hall,

brought to the Court of Common Pleas in Fairfield County and tried to the jury before *Curtis, J.;* verdict and judgment for the plaintiff for $300, and appeal by the defendant for alleged errors in the charge of the court. *Error and new trial granted.*

The complaint was as follows: —

"1. The defendant was conducting and maintaining a ball and dance, for admission to which and for the privileges of dancing therein, during said ball, the defendant charged an admission fee. 2. On said date the plaintiff purchased a ticket of the defendant's agent at the door of said 'armory,' entitling her to admission to said 'armory' hall and the privilege of dancing therein, and immediately after such purchase plaintiff entered said ball room of the defendant. 3. At the time of the grievances hereinafter committed by the defendant, there was a large concourse of people in said 'armory' hall. 4. While the plaintiff, on said date, was dancing with a gentleman in the large dance or ball room of the defendant, in the presence of said large number of people, the defendant by its servants and agents, rudely and forcibly seized the plaintiff's person and removed her from the floor of said ball room, and removed and ordered her from all the adjacent rooms then and there occupied by the defendant and used by its patrons, and ejected her from all of the premises, and denied, deprived and excluded the plaintiff from all of the privileges of said ball. 5. The said agents and servants of the defendant, during the time of the commission of the assault and battery, . . . addressed the plaintiff in loud, threatening and insulting language, . . . and the assault was committed in a gross, wanton and reckless manner and with intent to, and they in fact did, greatly humiliate the plaintiff and permanently wound her feelings, and then and there caused her physical pain and suffering. 6. At the time of said grievances the plaintiff was by trade, and was employed as, a paper-box maker, . . . and the plaintiff was receiving for her personal services in said trade . . . nine dollars per week. 7. By reason of said injuries the plaintiff became sick and nervous, suffered physical pain and great mental

distress and anguish, and became unfitted to properly work at her said trade as a paper-box maker, and was obliged to and did abandon the same, and her health is permanently impaired." The plaintiff claimed $2,000 damages.

The first defense was substantially a denial of the allegations of the complaint. The second defense, and the reply thereto, were as follows:—

" *Second defense.* 1. Paragraph 1 of the complaint is admitted. 2. The tickets sold by the defendant for admission to said Armory Hall on said date, were upon the following condition, viz:. ' The committee reserves the right to exclude all objectionable parties.' 3. The plaintiff so conducted herself at said ball that she became objectionable to the managers thereof, who thereupon requested her to cease dancing, but did not deprive her of any other of the privileges of said ball. 4. Except as herein admitted, the allegations of the complaint are denied."

" *Reply of plaintiff to second defense.* Paragraphs 2 and 3 of the second defense are denied."

The court made the following finding of facts:—

" The plaintiff offered evidence tending to prove and claimed to have proved: That on the evening of January 27th, 1898, the defendant gave a public ball at a building hired by it for the purpose in the town of Danbury; that the defendant sold to the plaintiff a ticket for the sum of twenty-five cents, which entitled the holder to admission to said ball, with the privilege of dancing on the ball room floor when dancing was going on; that the plaintiff went to said ball in company with her sister, and the defendant admitted her to said ball on said ticket; that while dancing was in progress upon the ball room floor and the plaintiff was engaged in dancing thereon with a gentleman, a floor manager of said ball duly appointed by the defendant to have the regulation and charge of the dancing at said ball, in the presence of a large concourse of people laid hands upon the plaintiff angrily and rudely, and pushed her and compelled her to stop dancing, at the same time declaring that she and her companion were not proper persons to be dancing there, and or

dered her to leave the floor; that she left the floor rather than to attempt by force to persist in dancing, protesting that she was a fit person and that they had no right to stop her dancing for any such reason; that the feelings of the plaintiff were greatly hurt by such battery committed upon her, and the attending circumstances; that the plaintiff was of a highly nervous organization and that she was thrown into a highly nervous and excited state by said battery, and that in consequence she was unable to work at her trade of boxmaker up to the time of the trial, except for a period of two weeks and two days, and that she earned wages at the rate of nine dollars per week."

The defendant offered evidence tending to prove and claimed to have proved: "That the plaintiff's sister who accompanied her purchased the admission tickets to the ball; that said floor manager did not lay hands upon or touch the plaintiff's person; that at the time she claimed she was assaulted she was dancing in an indecent manner, and that the floor manager simply notified her that she could not dance any longer, and that she thereupon protested loudly and noisily as she left the floor; that the plaintiff continued to work at her usual occupation immediately after said evening for about two weeks, and that she was then discharged by her employer; that her condition of health was unchanged after said ball."

The defendant, among other things, requested the court to charge the jury "that the defendant corporation is not liable in exemplary damages for the malicious acts of its agents and servants, unless such acts were within the scope of the employment, and were previously authorized or ratified by the corporation;" and "that there is no evidence before this jury of any such authorization or ratification."

The court charged the jury that there were two rights of action described in the complaint: one for an assault and battery, and the other for having been deprived of the privileges of the dancing hall for which the plaintiff had contracted and had paid twenty-five cents; that if the jury found the plaintiff's story to be true, "that when she was

upon the floor the men (the floor managers) or one of them, came toward her and called out to her, and at the same time advanced to her and put his hand upon her shoulder rudely, insolently or angrily, at the same time telling her that she could not dance there, that she was not a fit person to be there,— then the plaintiff has established her case as to this portion of the case which refers to this battery, and she is entitled to receive a verdict from your hands for damages;" that if the jury found the facts as testified to by the defendant's witnesses, namely, that one of the floor managers, touching the gentleman with whom the plaintiff was dancing, upon the arm, without touching the plaintiff, said to them, "You can't dance here," then no assault and battery had been committed, and the verdict upon that feature of the case should be for the defendant.

The court charged that in fixing the amount of compensatory damages the jury might consider the evidence showing the physical injury sustained, the plaintiff's mental suffering and the loss of her earnings at her trade; and upon the subject of exemplary damages instructed the jury as follows: "Now, in addition to those damages, which are compensatory, the law permits you, in case you find this battery to have been inflicted upon her wantonly, maliciously, or in wanton disregard of her rights, to add to that sum which you find will compensate her, a sum as exemplary or punitive damages; and in this State you are allowed to award her as punitive damages such sum as you find, from your knowledge of the course of business in the courts of law in this State, to be her expenses in conducting this trial;" that the taxable costs which she would recover would by so much diminish the expenses of her trial, and should be considered by the jury in determining what the expenses of her trial were.

The court charged the jury that the second defense, that is, that the managers had directed the plaintiff to stop dancing because her conduct was objectionable, etc., applied only to the second cause of action described in the complaint, namely, a breach of contract by depriving her of the privileges for which she paid; and that if the jury found that no battery

had been inflicted upon the plaintiff, but found that the floor
managers were not justified in forbidding her the privilege of
dancing, and acted unreasonably and improperly in so doing,
that the plaintiff was entitled to a verdict for the amount of
the admission fee, twenty-five cents, and interest, no other
element of damage having been proved in connection with
that feature of the case; but if they found that there was no
battery, and that the plaintiff was acting improperly, their
verdict should be for the defendant.

The errors assigned relate to the charge to the jury.

*Eugene C. Dempsey* and *John R. Booth*, for appellant (defendant).

The defendant may be liable to the plaintiff for compensatory damages, but the record discloses no reason for the charge
that punitive damages could be awarded. *Thames Steamboat
Co.* v. *Housatonic R. Co.*, 24 Conn. 54. It was necessary for
the plaintiff by proper evidence to have connected the corporation in some manner with this act, other than by the proof
of the mere relation of master and servant, if punitive damages were to be claimed. 1 Sedg. on Dam. 535, and cases
therein cited; Thomp. on Neg. 476, and references; *Lake
Shore & M. S. R. Co.* v. *Prentice*, 147 U. S. 101; *Cleghorn*
v. *New York C. R. Co.*, 56 N. Y. 44. Mental anguish as a
distinct element of damage in addition to bodily suffering,
must be the direct result of the injury. 1 Sedg. on Dam.
§ 57; *Chicago* v. *McLean*, 133 Ill. 148; *Gibney* v. *Lewis*, 68
Conn. 396. Humiliation and mental anguish suffered in consequence of the revocation of the license, afford the plaintiff no
ground for claiming damages, as the defendant had a right to
revoke its license. But one cause of action appears, *viz.*, that
for an assault and battery. The entire complaint is devoted
to a narrative of this assault, together with the events leading
to and resulting from it. The allegations relative to the purchase of the ticket, etc., are simply preliminary to the main
question, the assault. The complaint does not contain the
necessary allegations for recovery upon a breach of contract,
and if the plaintiff is to violate all rules of pleading and com-

bine two separate and distinct causes of action in one count, it must clearly appear that two such causes exist.

*Daniel Davenport* and *Howard W. Taylor*, for appellee (plaintiff).

The complaint had the double aspect in which it was viewed by the defendant and by the court. *Craft Refrig. Co.* v. *Quinnipiac Brewing Co.*, 63 Conn. 551. The charge on the measure of damages on the contract was altogether too favorable to the defendant. The charge upon the subject of exemplary damages was correct. The courts of this State have never recognized the limitation which the defendant asserts to exist, *viz.*, that the particular malicious or wanton act of the servant must have been previously authorized or subsequently ratified by the principal. Neither can such a limitation be supported on principle, and though there has been a diversity of decisions on the subject in other jurisdictions, the better class of cases deny such a limitation. 5 Thomp. on Corp. §§ 6383, 6395, 6388; Wood's Mas. & Ser. (2d ed.) § 323; Wood's Mayne on Dam. (1st Amer. ed.) 62; *Goddard* v. *G. T. R. Co.*, 57 Me. 202; *Hanson* v. *R. R. Co.*, 62 id. 84; *Railroad Co.* v. *Hurst*, 36 Miss. 660; *Hopkins* v. *Railroad Co.*, 36 N. H. 9; *Atlantic & G. W. R. Co.* v. *Dunn*, 19 Ohio St. 167; *Jefferson R. Co.* v. *Rogers*, 38 Ind. 116; *Quigley* v. *C. P. R. Co.*, 11 Nev. 369; *Gasway* v. *R. R. Co.*, 58 Ga. 219; *R. R. Co.* v. *Blocher*, 27 Md. 277; *Turnpike Co.* v. *Boone*, 45 id. 344; *R. R. Co.* v. *Burke*, 53 Miss. 200; *R. R. Co.* v. *Larkin*, 47 Md. 155; *Doss* v. *Missouri R. Co.*, 59 Mo. 59; *Graham* v. *Pacific R. Co.*, 66 id. 536; *Tel. Co.* v. *Eyser*, 2 Colo. 142; *C. S. Ry. Co.* v. *Steen*, 42 Ark. 321; *Ry. Co.* v. *Rector*, 104 Ill. 296; *Wheeler & Wilson Co.* v. *Boyce*, 36 Kan. 350; *Jacobs* v. *R. Co.*, 10 Bush, 263; *R. Co.* v. *Rosenzweig*, 113 Pa. St. 519; *Traction Co.* v. *Orbann*, 119 id. 37; *Quinn* v. *S. C. Ry. Co.*, 29 S. Car. 381; *R. R. Co.* v. *Garrett*, 8 Lea, 438.

HALL, J. The complaint alleges in substance that the plaintiff, having contracted with and paid the defendant for the privilege of dancing at a certain ball, was, by the forcible

acts of the defendant's agents, prevented from exercising her said right, and was thereby caused pain and damage.

The trial court correctly charged the jury that the complaint described two causes of action: one for personal injury, and the other for a breach of contract. Under the averments of the complaint the plaintiff would have been entitled to a verdict upon proof either that she was forcibly prevented from dancing, as alleged, or that the defendant's agents, without using force, unlawfully deprived her of the privilege which was granted to her by her contract with the defendant.

We have no occasion to decide whether these two causes of action should have been stated in separate counts. Several causes of action may be stated in a single count, when such causes of action are not separate and distinct from each other; that is, separable from each other "by some distinct line of demarcation." *Craft Refrigerating Machine Co.* v. *Quinnipiac Brewing Co.*, 63 Conn. 551, 563. The defendant, not having demurred to the complaint, has waived the question whether the two causes of action were improperly joined in one count. Practice Book, p. 17, Rule IV. § 13.

Apparently no question was made at the trial but that under the pleadings the plaintiff, upon proof that the defendant's agent forcibly prevented her from dancing, became entitled to a verdict for a sum sufficient to indemnify her for the actual injuries she sustained, and which were the direct and natural consequences of the wrongful act complained of. The complaint alleges that in consequence of the assault the plaintiff was deprived of the privileges of the ball, that she suffered physical and mental pain and anguish, and lost her earnings in the trade at which she had been employed. The court instructed the jury that in determining the amount of compensatory damages to be awarded the plaintiff, they might take into consideration the indignity she had suffered by an assault in so public a place, the mental as well as her physical suffering which it caused her, and such loss as had been proved she had thereby sustained from inability to work at her trade.

"All the attending acts and circumstances which accom-

pany and give character to the assault may be given in evidence to enhance the damages." *Brzezinski* v. *Tierney*, 60 Conn. 55, 62. Mental as well as physical suffering, when properly alleged, may be proved as an element of actual damage, and as naturally and directly resulting from an assault of the character described in the complaint. *Gibney* v. *Lewis*, 68 Conn. 392, 396 ; *Seger* v. *Barkhamsted*, 22 id. *290, *298 ; *Masters* v. *Warren*, 27 id. *293, 299. The defendant has no cause to complain of the charge of the court with reference to the elements which go to make up compensatory damages.

The complaint alleges that the defendant's agent in committing the assault, " addressed the plaintiff in loud, threatening and insulting language," and that the assault upon the plaintiff was " committed in a gross, wanton and reckless manner and with intent to " injure the plaintiff.

The defendant, in effect, requested the court to charge the jury that the defendant society could not, upon the proof presented, be held liable in exemplary damages. The court did not comply with this request, but instructed the jury that in case they found that a battery had been inflicted upon the plaintiff by the defendant's agent, " wantonly, maliciously, or in wanton disregard of the plaintiff's rights," they might add to that sum which they should find sufficient to compensate the plaintiff for her injuries, " a sum as exemplary or punitive damages," and might award her as punitive damages such sum as the jury, from their " knowledge of the course of business in the courts of law in this State," should find " to be her expenses in conducting this trial," less the taxable costs which she would recover.

The jury returned a verdict for the plaintiff for $300. We have not the evidence in the case before us; but from the finding of facts and from the charge of the court, stating the claims of the parties as to the character and extent of the plaintiff's injuries, we think the jury may, under such instruction have included in their verdict, as an element of damages, the expenses incurred by the plaintiff in conducting her trial, less the taxable costs ; and unless this is a case **in which such expenses could lawfully be recovered, the**

charge of the court was incorrect and a new trial should be granted.

That a plaintiff may, in an action for an assault and battery and in certain other actions of tort, recover certain damages which are not compensatory within the technical and legal meaning of that word, but which are awarded with the view of punishing the defendant for his wrongful act, has been settled in this State, beyond question, by a large number of decisions extending from *Linsley* v. *Bushnell*, 15 Conn. *225, to *Gibney* v. *Lewis*, 68 id. 392.

The cases in which punitive damages may be awarded are only those actions of tort "founded on the malicious or wanton misconduct of the defendant," or upon "such culpable neglect of the defendant" as is "tantamount to malicious or wanton misconduct." *St. Peter's Church* v. *Beach*, 26 Conn. *355; *Welch* v. *Durand*, 36 id. 182; *Burr* v. *Plymouth*, 48 id. 460. And private corporations, as well as individuals, may for their own acts become liable in punitive damages. Sedgwick on Damages (8th ed.), § 379; *Merrils* v. *Tariff Mfg. Co.*, 10 Conn. 384; *Murphy* v. *New York & N. H. R. Co.*, 29 id. 496.

The expenses of litigation are not an element of the damages termed in law actual or compensatory damages; "they are not the natural and proximate consequence of the wrongful act," and they can only be considered by the jury in those cases in which exemplary damages may be awarded. *St. Peter's Church* v. *Beach, supra; Platt* v. *Brown*, 30 Conn. 336; *Mason* v. *Hawes*, 52 id. 12; *Gibney* v. *Lewis, supra.* Such expenses in excess of taxable costs, in cases in which they may be considered, limit the amount of punitive damages which can be awarded. *Wilson* v. *Granby*, 47 Conn. 59; *Burr* v. *Plymouth, supra.* In cases where they may be considered it is not usual to prove the expenses of litigation actually incurred, but the court may admit relevant evidence for that purpose. *Bennett* v. *Gibbons*, 55 Conn. 450.

The case before us, as shown by the record, is not one in which the defendant society could be held liable in punitive damages. The defendant is a corporation. The alleged as-

sault was committed by a floor manager "appointed by the defendant to have the regulation and charge of the dancing" at a ball given by the defendant. The assault which the court instructed the jury would, if found to have been committed and to have been inflicted wantonly and maliciously, entitle the plaintiff to exemplary damages, was the putting of his hand by one of the floor managers upon the plaintiff's shoulder "rudely, insolently or angrily," and while she was upon the ball room floor, "at the same time telling her that she could not dance there, and that she was not a fit person to be there." If these facts are sufficient to show that the act of the agent was malicious or wanton, they do not prove that the principal in any way participated in such malicious or wanton misconduct. As its agent was acting within the scope of his employment, the law compels the defendant to compensate the plaintiff for the injuries she has sustained from the wrongful acts of the agent, but it does not punish the defendant for the malicious purpose or intent which prompted the agent's conduct.

To render the principal liable in exemplary damages for the acts of his agent in the course of his employment, but done with such malicious intent, some misconduct of the former beyond that which the law implies from the mere relation of principal and agent, must be shown. It is not claimed that the defendant society directed the floor manager to remove the plaintiff, or to act toward any person in the manner in which it is alleged he did, or that the defendant has since adopted or approved of his action.

In *Cleghorn* v. *New York C. & H. R. R. Co.*, 56 N. Y. 44, 47, CHIEF JUSTICE CHURCH, in delivering the opinion of the court, says: "For injuries by the negligence of a servant while engaged in the business of the master, within the scope of his employment, the latter is liable for compensatory damages; but for such negligence, however gross or culpable, he is not liable to be punished in punitive damages unless he is also chargeable with gross misconduct."

In the case of *Lake Shore, etc., Ry. Co.* v. *Prentice*, 147 U. S. 101, 107, in which this question is very fully discussed

and the decisions in both the Federal and State courts upon this subject reviewed, MR. JUSTICE GRAY, speaking for the court, laid down the rule as deducible from the authorities, that " guilty intention upon the part of the defendant is required in order to charge him with exemplary or punitive damages. . . . Exemplary or punitive damages, being awarded, not by way of compensation to the sufferer, but by way of punishment of the offender, and as a warning to others, can only be awarded against one who has participated in the offense. A principal, therefore, though of course liable to make compensation for injuries done by his agent within the scope of his employment, cannot be held liable for exemplary or punitive damages, merely by reason of wanton, oppressive or malicious intent upon the part of the agent."

In Sedgwick on Damages, Vol. 1 (8th ed.), §§ 378 and 380, the author, after citing very fully the conflicting authorities in different jurisdictions upon this question, says : " It is the better opinion that no recovery of exemplary damages can be had against a principal for the tort of an agent or servant, unless the defendant expressly authorized the act as it was performed, or approved it, or was grossly negligent in hiring the agent or servant."

In the case at bar, as it appears by the record before us, we think compensation for the injury suffered was the full measure of the defendant's responsibility, and that there was error in charging the jury that they might award the plaintiff as punitive damages the expenses of trial in excess of taxable costs, and in not charging upon the subject of punitive damages as requested by defendant.

Error and new trial granted.

In this opinion the other judges concurred.