## CITY OF WEST HAVEN v. HARTFORD INSURANCE COMPANY

| SUPERIOR COURT | JUDICIAL DISTRICT OF NEW HAVEN | FILE NO. 264567 |

Memorandum filed August 14, 1990

*Gallant & Gallant,* for the plaintiff.

*Delaney, Zemetis, Donahue, Durham & Noonan,* for the defendant.

BERDON, J. Before the court are the parties' cross motions for summary judgment on the first count of a multicount complaint.[1] The first count is predicated on the claim of the plaintiff city of West Haven that the defendant breached its contract of insurance by not paying punitive damages of $60,000 awarded to Tracy McAneny in a federal district court action brought against two West Haven police officers, Joseph Innamorato and Joseph Conzo (police officers) for violations of his civil rights. The facts pertaining to the first count are not in dispute and the legal issues are ripe for summary determination. *Catz* v. *Rubenstein,* 201 Conn. 39, 48, 513 A.2d 98 (1986).

McAneny brought suit against the police officers in the United States District Court for Connecticut[2] seeking damages pursuant to 28 U.S.C. § 1983 for violation of his civil rights. His civil rights suit was predicated on the ground that the police officers prepared and furnished a false affidavit to establish probable cause to support a warrant for his arrest. The complaint in McAneny's civil rights suit also alleged: "From their prior investigation, the . . . [police officers] knew that December 29 was . . . [McAneny's] birthday. On December 29, 1983, at approximately 2:30 p.m., the . . . [police officers] visited . . . [McAneny] at his . . . place of employment. As [McAneny] extended his hand to greet them . . . [one of the police

---

[1] The remaining counts allege breach of duty of good faith and fair dealings, violation of the Connecticut Unfair Insurance Practices Act and violation of the Connecticut Unfair Trade Practices Act.

[2] *McAneny* v. *Innamorato,* United States District Court, District of Conn., Docket No. N-84-548 (June 11, 1987).

officers] placed a handcuff upon . . . [McAneny's] wrist and stated: 'Happy Birthday, Sucker. You're under arrest.' [The police officers] . . . thereupon arrested . . . [McAneny based on the arrest warrant support by the false affidavit]. . . . [The police officers] . . . thereupon transported . . . [McAneny] in handcuffs and in police custody to the headquarters of the West Haven Police Department and subjected him to routine booking procedures and thereafter required . . . [McAneny] to appear in the Connecticut Superior Court at West Haven on many occasions as an accused criminal." On June 20, 1984, approximately six months after the arrest, the criminal charges against McAneny were dismissed.

The defendant furnished independent counsel to defend the police officers in the civil rights suit under a reservation of rights. On June 11, 1987, after a trial, the jury found in favor of McAneny against both police officers, and awarded $30,000 in compensatory damages and $60,000 in punitive damages. The federal district court rendered judgment on the verdict and awarded attorney's fees pursuant to 42 U.S.C. § 1988. The defendant paid the compensatory damages of $30,000 and the attorney's fees, but refused to pay the punitive damages awarded against the police officers. The award of the $60,000 was paid by the plaintiff on behalf of the police officers and the plaintiff seeks to recover this sum.

The motions were argued on the basis that the plaintiff was the only insured under the contract of insurance. Accordingly, the court will treat the case as the parties have done. *Lashgari* v. *Lashgari,* 197 Conn. 189, 196, 496 A.2d 491 (1985). In order to establish liability, the plaintiff must prove the following two elements. First, the plaintiff must prove that it was liable to indemnify the police officers for the punitive dam-

ages the jury awarded against them. The contract of insurance entered into by the parties provides for the following: "The company [Hartford Insurance] will pay on behalf of the insured [city of West Haven] all sums which the insured shall become legally obligated to pay as damages. . . ." So if the plaintiff was not obligated to indemnify the police officers, there would be no liability on the part of the defendant. Second, the contract of insurance must provide that the defendant is obligated to indemnify the plaintiff for the punitive damage award. The first element is dispositive of these motions since the court finds there was no obligation on the part of the plaintiff to idemnify the police officers for an award of punitive damages against them.

Under the common law, "the municipality would have been immune from liability for the tortious conduct of its police officers. . . ." *Ahern* v. *New Haven*, 190 Conn. 77, 82, 459 A.2d 118 (1983). Furthermore, a principal is ordinarily not liable for punitive damages awarded for acts of its agents in the course of their employment. *Maisenbacker* v. *Society Concordia*, 71 Conn. 369, 379, 42 A. 67 (1899). Of course, there are exceptions, such as when the principal expressly authorizes the act as it was performed, which was the basis for the award of punitive damages. Id., 380; 4 Restatement (Second), Torts § 909. Certainly, the plaintiff does not claim that it is responsible for the punitive damages because it authorized these police officers to act in the outrageous manner that led to the award. Even if the plaintiff was a named defendant in the civil rights suit and the prerequisites for liability were found; *Monell* v. *New York City Department of Social Services*, 436 U.S 658, 690–91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); it would have absolute immunity from liability for punitive damages under § 1983. *Newport* v. *Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S. Ct. 2748, 69

L. Ed. 2d 616 (1981). If the plaintiff is to be held liable for punitive damages, therefore, it must be found liable on a statutory basis. See *Gionfriddo* v. *Avis Rent A Car System, Inc.,* 192 Conn. 280, 472 A.2d 306 (1984). The plaintiff claims that the statutory basis for its liability to indemnify the police officers can be found in General Statutes §§ 7-101a and 7-465.

Before determining whether either statute would require indemnification on the part of the plaintiff, the court must first determine the nature of the punitive damages awarded by the jury in the civil rights suit in order to put it in its proper perspective. Violation of a person's civil rights by individual public officers under 42 U.S.C. § 1983 permits an award of compensatory and punitive damages; *Carlson* v. *Green,* 446 U.S. 14, 22, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980); and attorney's fees; 42 U.S.C. § 1988. Punitive damages may be awarded under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith* v. *Wade,* 461 U.S. 30, 56, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983). The federal district court in the civil rights suit instructed the jury in determining whether they should award punitive damages in almost the identical language of *Wade* as follows: "Punitive damages are additional damages, beyond those awarded as compensatory, to be awarded to the plaintiff as a deterrent to the defendant to discourage him from committing the conduct complained of in the future. You may only award punitive damages if you find the defendant [police officers] acted with *evil motive or intent, or with reckless and callous disregard of, or indifference to, the rights or safety of plaintiff [McAneny].* You have latitude in determining the amount of punitive damages to add to nominal or compensatory damages. You may

add such amount as you shall unanimously agree is proper to punish defendants for extraordinary misconduct and to serve as an example or warning to others not to engage in such conduct. However, the amount must be fixed with calm discretion and sound reason, and not because of sympathy, bias, or prejudice against any party." (Emphasis added.)

The verdict form submitted to the jury contained interrogatories for identification of the amount of compensatory or nominal damages and the amount of punitive damages.[3] Since the jurors awarded punitive damages against both defendant police officers in the civil rights suit, they clearly found, in accordance with the trial court's instructions, that the police officers acted with evil motive or intent, *or* with reckless and callous disregard of, or indifference to, the rights or safety of McAneny. "[T]he jury is presumed to follow the court's instructions." *State* v. *Williams*, 204 Conn. 523, 534, 529 A.2d 653 (1987).

General Statutes (Rev. to 1987) § 7-101a[4] provided in relevant part: "(a) Each . . . city . . . shall protect and save harmless any . . . full-time municipal employee, of such municipality from financial loss and

---

[3] The verdict-interrogatory form was completed by the jury as follows:

"PLAINTIFF'S VERDICT

"1. In this case do you find the issues in favor of the plaintiff as to Defendant Innamorato?        Yes  x   No ___

"2. In this case do you find the issues in favor of the plaintiff as to Defendant Conzo?        Yes  x   No ___
   If your answer to Question 1 or 2 was 'yes' proceed to Questions 3 and 4.

"3. Plaintiff shall receive compensatory or nominal damages in the amount of *$30,000*

"4. Plaintiff shall receive punitive damages in the amount of *$60,000*"

[4] Public Acts 1989, No. 89-378 amended § 7-101a by substituting "municipality" for city, defining municipality and making it clear that "such act" refers to "malicious, wanton or wilful" acts.

expense, including legal fees and costs, if any, arising out of any claim, demand, suit or judgment by reason of alleged negligence, or for alleged infringement of any person's civil rights, on the part of such employee while acting in the discharge of his duties.

"(b) In addition to the protection provided under subsection (a) of this section, each . . . city . . . shall protect and save harmless any such . . . full-time municipal employee from financial loss and expense, including legal fees and costs, if any, arising out of any claim, demand or suit instituted against such officer or employee by reason of alleged malicious, wanton or wilful act or ultra vires act, on the part of such . . . employee while acting in the discharge of his duties. In the event such . . . employee has a judgment entered against him for such act in a court of law, such municipality shall be reimbursed by such . . . employee for expenses it incurred in providing such defense and shall not be held liable to such officer and employee for any financial loss or expense resulting from such act."

The plaintiff argues that since subsection (a) of § 7-101a requires a municipality to indemnify its employees for all financial loss and expenses "arising out of any . . . judgment . . . for alleged infringement of any person's civil rights, " and since the subsection does not limit this liability solely to compensatory damages, the plaintiff was required to indemnify the police officers for the punitive damages award. This argument is flawed because it looks at § 7-101a solely through the lens of subsection (a) and does not consider subsection (b). "It is an accepted principle of statutory construction that, if possible, the component parts of a statute shall be construed harmoniously in order to render an overall reasonable interpretation." *Galvin* v. *Freedom of Information Commission*, 201 Conn. 448,

456, 518 A.2d 64 (1986). Construing subparagraph (a) as requiring indemnification for damages resulting from wilful or wanton acts would fly in the face of subsection (b), which provides that the municipality is to pay for the *defense* of claims predicated on malicious, wanton or wilful acts, but if a judgment is entered finding the municipal employee acted in such a manner, then the employee must reimburse the municipality for the costs of the defense and the municipality shall not be liable for indemnification of any financial loss resulting from such malicious, wilful or wanton acts. The court is "entitled to presume that, in passing a statute, the legislature not only did so with knowledge of the existing statutes but also that it did not intend to enact a conflicting statute." *Perille* v. *Raybestos-Manhattan-Europe, Inc.*, 196 Conn. 529, 541, 494 A.2d 555 (1985).[5]

Furthermore, if it was the intention of the legislature to require the municipality to indemnify its employees for punitive damages caused by wilful and wanton acts under subsection (a), there would have been no purpose for the enactment of Public Acts 1977, No. 77-399, which added subsection (b) to § 7-101a requiring the municipality to be initially responsible for the defense of such claims and suits. When changes or additions are made to a statute it is not to be assumed that there was no purpose for them. *King* v. *Board of Education*, 203 Conn. 324, 335, 524 A.2d 1131 (1987). Indeed, this 1977 amendment adding subsection (b) makes it certain that the legislature never intended that subsection (a) would cover punitive damages for wilful and wanton acts. Subsequent legislative acts "may throw light on the legislative intent of a former related act." *General*

---

[5] Even if there was room for any other interpretation, which the courts find that there is not, a strict construction of the statute is required because it is in derogation of the common law. *Ahern* v. *New Haven*, 190 Conn. 77, 82, 459 A.2d 118 (1983); *Edmundson* v. *Rivera*, 169 Conn. 630, 633, 363 A.2d 1031 (1975).

*Realty Improvement Co.* v. *New Haven,* 133 Conn. 238, 242, 50 A.2d 59 (1946). Finally, the legislative history makes clear that the purpose of subsection (b) was to add the right to a defense only in a frivolous case claiming wilful and wanton acts which did not exist under subsection (a). See remarks of Representative Dorothy Barnes, 20 H.R. Proc., Pt. 7, 1977 Sess., p. 2843. "Statements made on the floor of the house, although not controlling, may be judicially noticed and are a strong indication of legislative intent." *Manchester Sand & Gravel Co.* v. *South Windsor,* 203 Conn. 267, 276, 524 A.2d 621 (1987).

General Statutes § 7-415, also relied upon by the plaintiff, provides in pertinent part: "Any . . . city . . . notwithstanding any inconsistent provision of law, general, special or local, shall pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded for infringement of any person's civil rights or for physical damages to person or property, except as hereinafter set forth, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, *and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee* in the discharge of such duty." (Emphasis added.) The clear and unambiguous language of the statute emphasized by the court excludes indemnification when the act of the municipal employee is wilful or wanton. Since the statute is clear and the language unambiguous, there is no room for construction. *Lamb* v. *Burns,* 202 Conn. 158, 168, 520 A.2d 190 (1987). Liability for damages as a result of wilful and wanton acts of a municipality's employees is clearly excluded.

The plaintiff claims, however, that the recklessness and callousness that give rise to punitive damages under § 1983 is not the equivalent of wanton acts excluded under the state statutes. Accordingly, the plaintiff argues that since the jurors in the civil rights suit did not indicate the basis for the punitive damages —that is, whether they found the conduct of the police officers to be wilful (which the plaintiff concedes would not be covered) or that they acted in a reckless and callous manner (which the plaintiff argues would be covered)—it was required to indemnify the police officers.

The simple answer to the plaintiff's argument is that wanton acts are the equivalent to acts done recklessly or in callous disregard of, or indifference to, the rights or safety of others.[6] This is the plain meaning of wantonness. Webster's Third New International Dictionary ("marked by or manifesting heedless disregard of justice or of the rights, safety, and feelings of others"). "Words and phrases of a statute are to be construed according to the commonly approved usage of the language." *Ganim* v. *Roberts,* 204 Conn. 760, 763, 529 A.2d 194. Furthermore, the courts have consistently defined wanton misconduct to be a reckless disregard of the rights of others. *Markey* v. *Santangelo,* 195 Conn. 76, 78, 485 A.2d 1305 (1985); *Bordonaro* v. *Senk,* 109 Conn. 428, 147 A.2d 136 (1929); *Menzie* v. *Kalmonowitz,* 107 Conn. 197, 199, 139 A. 698 (1928). "[T]echnical common law words when used in a statute without definition will generally be construed in that sense unless a contrary intention appears from the context"; *Gentry* v. *Norwalk,* 196 Conn. 596, 605, 494 A.2d 1206 (1985), quoting *Jones* v. *Magruder,* 42 F. Sup. 193, 197

---

[6] The claims of the plaintiff to the contrary notwithstanding, the distinction between "disregard of" or "indifference to" when preceded by the adjective "callous" is a distinction without a difference.

(D. Md. 1941); and even if the words are not technical, the court may look to the common understanding expressed in the law. *Beloff* v. *Progressive Casualty Ins. Co.*, 203 Conn. 45, 59, 523 A.2d 477 (1987). Black's Law Dictionary (5th Ed.) defines wanton act as "[o]ne done in reckless disregard of the rights of others . . . and is such conduct as indicates a reckless disregard of the just rights or safety of others."

The decision that punitive damage awards against police officers and other municipal employees that are predicated on acts or other behavior that is wilful or wanton will not be indemnified by the city is consistent with the purposes of an award of such damages. There may be good reason for requiring the public purse to respond to compensatory damages. A harm inflicted by a public employee acting under color of law should be borne by the public to make the injured person whole. Punitive damages, however, "are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future." 4 Restatement (Second), Torts § 908 (1). The very nature of punitive damages makes it inappropriate to require the municipality to assume the burden. "Regarding retribution, it remains true that an award of punitive damages against a municipality 'punishes' only the taxpayers, who took no part in the commission of the tort. These damages are assessed over and above the amount necessary to compensate the injured party. Thus, there is no question here of equitably distributing the losses resulting from official misconduct. Indeed, punitive damages imposed on a municipality are in effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill. Neither reason nor justice suggests that such retribution should be visited upon

the shoulders of blameless or unknowing taxpayers."
*Newport* v. *Fact Concerts, Inc.,* supra, 267.

On the other hand, hitting the pocketbook of those who intentionally or wantonly infringe on the rights of others, such as in the case of these police officers, is a positive way of ensuring that such outrageous conduct will not be repeated by these officers. Equally important, it sends a message to all public employees that such conduct will not be condoned or tolerated in our democracy that places high value on the rights of individuals. Public servants must be made aware that when such reprehensible, intentional or wanton conduct occurs, it jeopardizes not only the admissibility of evidence in criminal cases and their jobs, but also their own personal assets. "By allowing juries and courts to assess punitive damages in appropriate circumstances against the offending official, based on his personal financial resources, the statute directly advances the public's interest in preventing repeated constitutional deprivations." Id., 269.

In sum, the court finds that the plaintiff was not required to pay the punitive damages awarded in the civil rights suit in favor of McAneny against the police officers. The plaintiff paid it as a mere volunteer without obligation under law.[7] The defendant, therefore, has no responsibility to indemnify the plaintiff under the terms of its contract of insurance. Accordingly, the motion of the defendant for summary judgment on the first count of the complaint is granted.

---

[7] The waiver arguments of the plaintiff—that is, that the defendant waived any rights to contest its liability for punitive damages because it (1) failed in the civil rights suit to provide independent counsel and (2) required counsel to submit interrogatories—are totally without merit. Independent counsel was supplied for the defendants in the civil rights suit. The judge submitted interrogatories to determine the amount of the punitive damages. The defendant would not be liable for punitive damages under any definition upon which the jury could award them. Accordingly, any fuller delineation of these damages would serve no purpose.