[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION (MOTION TO STRIKE)
CT Page 10619
The defendant has filed a motion to strike Counts I and III and the prayers for relief of punitive damages and attorneys fees, as set forth in the plaintiff's Complaint and Amended Complaint, dated April 2, 2001 and May 21, 2001, respectively. Count I alleges that the defendant wrongfully terminated the plaintiff's employment in January, 2001, and Count III alleges that the defendant's actions subsequent to terminating the plaintiff have placed the plaintiff in a "false light among his peers."
Regarding Count I, the defendant argues that the plaintiff has failed to allege in his pleadings or otherwise show that his discharge was in violation of an explicit public policy as required by law. As to Count III, the defendant argues that the plaintiff has failed to sufficiently plead that the false light to "which he was subjected, was disseminated to the general public. Lastly the defendant argues that the prayers for the relief of punitive damages and attorneys fees should be stricken because such damages are not recoverable against an employer based on vicarious liability, and because the plaintiff's claim for attorneys fees is not valid in the absence of an authorizing statute.
The facts construed in a light most favorable to the plaintiff for the purposes of this motion show that the plaintiff was working as a truck driver for the defendant. The defendant had contracted out his services to the United Stationers Supply Co. in North Branford, Connecticut. On January 29, 2001 at the end of the work day, the plaintiff was given oral notice and a written notice by his manager at United Stationers that he had to take a drug test. The date of the written notice handed to the plaintiff was January 18, 2001. This was the plaintiff's first notice of the drug test. The plaintiff indicated his willingness to take the drug test.
On January 31, 2001, the plaintiff's supervisor from Driver Logistic Services, Ms. Mango, called the plaintiff to inquire as to whether he had taken the drug test. The plaintiff informed her that he would take the test that day. His supervisor informed him that "by law" the plaintiff had to take the drug test within 24 hours of the[1] notice or be terminated. The plaintiff, never having been informed of a necessity to be tested within 24 hours of receiving a notice, promptly submitted to a drug test on the same day, January 31, 2001. Ms. Mango, the plaintiff's supervisor at the defendant Driver Logistic Services, Inc. telephoned the plaintiff on the evening of January 31, 2001, approximately 6 hours after he took the drug test and informed the plaintiff that he was terminated for failing the drug test. In fact, it was later revealed on May 16, 2001, when the plaintiff was attending a second hearing for unemployment compensation benefits, that the plaintiff had, in fact, passed the CT Page 10620 subject drug test despite the defendant's supervisor's statement to the plaintiff that he had failed the test. Additionally, on May 16, 2001, it was revealed that at the time of the plaintiff's termination on January 31, 2001, for allegedly failing the drug test, the results of that test were not known to the defendant. The results were not available from the laboratory until February 3, 2001, 3 days after the test and 3 days after the plaintiff's termination from his employment. When confronted with this information, the defendant's supervisor Mango, admitted that she knew that the plaintiff had not failed the drug test, but the "company chose to assign a failure against the plaintiff."
The news of the plaintiff's termination for allegedly failing the drug test was communicated by the defendant and its employees to the plaintiff's co-workers and from them, throughout the local trucking industry. The defendant also communicated the false information to a public tribunal, the Connecticut Employment Security Appeals Board, when the plaintiff sought unemployment compensation benefits.
The plaintiff's Complaint and Amended Complaint both consist of three counts, sounding in wrongful discharge, defamation and "false light." The present motion to strike is directed to only Count I, wrongful discharge, Count III, "false light" and the claims for punitive damages and attorneys fees.
In ruling on a motion to strike the court must first look to the standard of review. Practice Book § 10-39 reads in pertinent part as follows:
 (a) Whenever any party wishes to contest (1) the legal sufficiency of the allegations of any complaint, counterclaim or cross claim, or of any one or more counts thereof, to state a claim upon which relief can be granted, that party may do so by filing a motion to strike the contested pleading or part thereof.
"The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." Mingachos v. CBS, Inc., 196 Conn. 91, 108,491 A.2d 368 (1985). A motion to strike shall be granted if "the plaintiff's complaint [does not] sufficiently [state] a cognizable cause of action as a matter of law." Mora v. Aetna Lfe and Casualty Ins. Co.,13 Conn. App. 208, 211, 535 A.2d 390 (1988).
A motion to strike "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings" (Emphasis omitted.) Id. "A motion to strike is properly granted CT Page 10621 where a plaintiff's complaint alleges legal conclusions unsupported by facts."Id. "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." Gordon v. Bridgeport Housing Authority,208 Conn. 161, 170, 544 A.2d 1185. (1988). A motion to strike "is to be tested by the allegations of the pleading demurred to, which cannot be enlarged by the assumption of any fact not therein alleged." (Internal quotation marks and citations omitted.) Alarm Applications Co. v.Simsbury Volunteer Fire Co., 179 Conn. 541-50, 427 A.2d 822 (1980).
Upon deciding a motion to strike, the trial court must construe the "plaintiff's complaint in [a] manner most favorable to sustaining its legal sufficiency." Bouchard v. People's Bank, 219 Conn. 465, 471,594 A.2d 1 (1991). "The allegations of the pleading involved are entitled to the same favorable construction a trier would be required to give in admitting evidence under them and if the facts provable under its allegations would support a defense or a cause of action, the motion to strike must fail." Mingachos v. CBS, Inc., 196 Conn. 91, 108-09,491 A.2d 368 (1985). However, if the plaintiff has alleged mere conclusions of law unsupported by the requisite facts, the motion to strike should be granted. Cavallo v. Derby Savings Bank, 188 Conn. 281,285, 449 A.2d 986 (1982).
 I.
In his Complaint and Amended Complaint, the plaintiff alleges he was a "lead" truck driver for the defendant, DLS, having had his services contracted out to United Stationers Supply Co. in Branford, Connecticut. He does not allege that the terms of his employment were that he was to be employed for a definite period of time. Accordingly, the plaintiff is deemed to be an employee at will.
 "The complaint does not allege that there was an employment contract for a specified term. We, therefore, infer from the complaint that the plaintiff-employee and the defendant-employer had an employment at will relationship, that is, the plaintiff was hired for an indefinite period and his employment was terminable at the will of the defendant." Morris v. Hartford Courant Co., 200 Conn. 676, 678, 513 A.2d 66 (1986); Somers v. Cooley Chevrolet Co., 146 Conn. 627, 629, 153 A.2d 426 (1959).
Additionally in interpreting the complaint in a manner most favorable to the plaintiff the court must assume, in this case, that the plaintiff was falsely accused of failing the drug test. The question becomes, therefore, whether a false accusation of this type is sufficient to CT Page 10622 support an action for wrongful discharge.
Sheets v. Teddy's Frosted Food, Inc., 179 Conn. 471, 427 A.2d 385
(1980), recognized that it is a "general proposition that contracts of permanent employment, or for an indefinite term, are terminable at will."Id., 474; see, e.g., Somers v. Cooley Chevrolet Co., supra; Fisher v.Jackson, 142 Conn. 734, 736, 118 A.2d 316 (1955). In Sheets, however, the court "recognized a common law cause of action in tort for the discharge of an at will employee if the former employee can prove a demonstrably improper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." Carbone v. Atlantic RichfieldCo., 204 Conn. 460, 466-67, 528 A.2d 1137 (1987), quoting Sheets v.Teddy's Frosted Food, Inc., supra, 475.
In interpreting this exception, the courts have taken a narrow view. "We note our adherence to the principle that the public policy exception to the general rule allowing unfettered termination of an at-will employment relationship is a narrow one. . . . We are mindful that courts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation." Burnham v. Karl Gelb,P.C., 252 Conn. 153, 159, 745 A.2d 178 (2000); Parsons v. UnitedTechnologies Corp., 243 Conn. 66, 79, 700 A.2d 655 (1997).
In Atkins v. Bridgeport Hydraulic Co., 5 Conn. App. 643, 501 A.2d 1223
(1985), the Appellate Court recognized a limitation on the public policy exception to the at-will doctrine. The court in Atkins concluded: "A finding that certain conduct contravenes public policy is not enough by itself to warrant the creation of a contract remedy for wrongful dismissal by an employer. The cases which have established a tort or contract remedy for employees discharged for reasons violative of public policy have relied upon the fact that in the context of their case the employee was otherwise without remedy and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated." (Emphasis added; internal quotation marks omitted.) Id., 648; Burnham v. Karl Gelb, P.C., supra, at 159-160.
There is a growing receptivity to recognize as actionable tort claims for wrongful discharge by an employer arising out of termination for an employee's refusal to commit perjury, for filing a workers' compensation claim, for engaging in union activity or for serving on a jury. Sheetsv. Teddy's Frosted Food Co., supra at 476-77. The court in Sheets
determined that a cause of action for wrongful discharge will lie when the former employee can demonstrate an improper reason for the discharge, "a reason whose impropriety is derived from some important violation of public policy." Id., 475. Sheets warns, however, that courts should proceed cautiously in their consideration of whether a public CT Page 10623 policy violation exists. Id., 477; Thibodeau v. Design Group OneArchitects, LLC, supra, at 578-79.
 "The issue then becomes the familiar common-law problem of deciding where and how to draw the line between claims that genuinely involve the mandates of public policy and are actionable, and ordinary disputes between employee and employer that are not. We are mindful that courts should not lightly intervene to impair the exercise of managerial discretion or to foment unwarranted litigation. We are, however, equally mindful that the myriad of employees without the bargaining power to command employment contracts for a definite term are entitled to a modicum of judicial protection when their conduct as good citizens is punished by their employers." Sheets v. Teddy's Frosted Food Co., supra at 478.
Later cases test and define the limits of an important violation of public policy. Because of the vagueness that inheres in the concept of public policy; Morris v. Hartford Courant Co., supra at 680; the court must make an analysis of employee claims in such cases. Faulkner v.United Technologies Corp., supra at 588-89.
In Morris, the defendant employer cited misappropriation of company funds as its reason for the plaintiff employee's termination. The plaintiff had brought an action in tort for wrongful discharge, claiming that his employer's false accusations of criminal conduct violated public policy. Our Supreme Court determined that the plaintiff's claim of wrongful discharge did not fall within the narrow Sheets exception to the terminable at-will rule because the plaintiff had not identified any public policy that was "affronted by his termination." Id., 680. The plaintiff failed to allege a violation of any explicit statutory or constitutional provision. Id. Moreover, the plaintiff did not allege the contravention of any judicially conceived notion of public policy. Id.
Our Supreme Court, therefore, held that an accusation of criminal conduct does not derive from an important violation of public policy and denied the plaintiff's requested relief. Id.
In the present case, the plaintiff was wrongly accused of failing a drug test, and this was the specific reason stated for his termination. This reason for the plaintiff's termination was communicated to the plaintiff, his co-employees and the Connecticut Employment Security Appeals Board. The plaintiff argues that the defendant has violated two important public policies in discharging the plaintiff. In the first instance, the defendant has violated the public policy of prohibiting CT Page 10624 employers from using drug tests to terminate employees who have not tested positive on a urinalysis drug test, a policy it is argued, which is clearly embodied in Connecticut's statutory law. The plaintiff points to General Statutes § 31-51u which states as follows:
 (a) No employer may determine an employee's eligibility for promotion, additional compensation, transfer, termination, disciplinary or other adverse personnel action solely on the basis of a positive urinalysis drug test result unless (1) the employer has given the employee a urinalysis drug test, utilizing a reliable methodology, which produced a positive result and (2) such positive test result was confirmed by a second urinalysis drug test, which was separate and independent from the initial test, utilizing a gas chromatography and mass spectrometry methodology or a methodology which has been determined by the Commissioner of Public Health to be as reliable or more reliable than the gas chromatography and mass spectrometry methodology.
 (b) No person performing a urinalysis drug test pursuant to subsection (a) of this section shall report, transmit or disclose any positive test result of any test performed in accordance with subdivision (1) of subsection (a) of this section unless such test result has been confirmed in accordance with subdivision (2) of said subsection (a).
This court finds that the violation of General Statutes § 31-51u by the defendant is a violation of an important public policy that was formulated to protect employees from unwarranted termination and a violation of their privacy, which could result from a false reading on one urinalysis test.
The plaintiff while promoting this argument in his memorandum of law in opposition to the motion to strike, has not addressed the defendant's argument that the plaintiff did not plead a violation of General Statutes § 31-51u in the plaintiff's Complaint or the plaintiff's Amended Complaint; nor did the plaintiff plead that his termination was for some demonstrably improper reason constituting a violation of an important public policy. Sheets v. Teddy's Frosted Food Co., supra. The defendant argues that to avoid the striking of a wrongful discharge claim, an employee at will must in his pleading state the public policy allegedly violated, with reference to applicable statutory law. Carbone v. AtlanticRichfield Co., 204 Conn. 460, 528 A.2d 1137 (1987). CT Page 10625
The court does not find that the plaintiff's failure to plead a specific statutory citation or his failure to use the precise or exact words "violation of an important public policy" in his Complaint or Amended Complaint is fatal to Count I, thus subjecting it to a motion to strike. The plaintiff's pleading is replete with reference to the drug test; it's use as the cause for the plaintiff's termination; the wrongful use of one test for termination; and the transmission of the false results of the drug test. While it is indeed preferable to cite statutory authority to reference a violation of an important public policy, this court will not strike Count I due to the lack of it. The defendant's behavior, as alleged, and as admitted by the defendant employer's supervisor, is a clear violation of the public policy set forth in General Statutes § 31-51u. This court is "mindful that the myriad of employees without the bargaining power to command employment contracts for a definite term are entitled to a modicum of judicial protection when their conduct as good citizens is punished by their employers." Sheetsv. Teddy's Frosted Food Co., supra at 478."
 II
In Count III, the plaintiff alleges that the defendant is liable for the tort of "false light". Specifically, the plaintiff alleges that the defendant has "falsely published" that the plaintiff failed a drug test, when in fact, he does not use drugs, and he did not fail the drug test that he submitted to. The plaintiff claims that by indicating that the plaintiff failed the drug test, the defendant placed the plaintiff in a "false light" among his peers, injuring his reputation and causing the plaintiff difficulty in obtaining employment in his profession as a truck driver. The defendant in moving to strike Count III alleging "false light" argues that the essence of the claim is "publicity" which places the plaintiff in a false light in the public eye. Therefore, the plaintiff must allege that the false light to which he was subjected was communicated to the general public as opposed to merely being published to unnamed third persons. The defendant argues that the plaintiff has not done this. The plaintiff, however, contends that the communication of the false results of his drug test to his co-workers, and from them, the local trucking industry and the Connecticut Employment Security Appeals Board satisfies the requirement regarding publicity. The court agrees with the plaintiff.
The existence of a cause of action for invasion of privacy is recognized by the Connecticut Supreme Court. Venturi v. Savitt, Inc.,191 Conn. 588, 591, 468 A.2d 933 (1983); Goodrich v. WaterburyRepublican-American, Inc., 188 Conn. 107, 127, 448 A.2d 1317 (1982).(fn6) In recognizing this cause of action, the Supreme Court adopted the CT Page 10626 definition and categories of invasion of privacy as set forth in 3 Restatement (Second), Torts 652A: (a) unreasonable intrusion upon the seclusion of another; (b) appropriation of the other's name or likeness; (c) unreasonable publicity given to the other's private life; or (d) publicity that places the other in a false light before the public. Jonapv. Silver, 1 Conn. App. 550, 557, 474 A.2d 800 (1984); Goodrich v.Waterbury Republican-American, Inc., supra, 128; see Venturi v. Savitt,Inc., supra.
In order to establish invasion of privacy by false light, the plaintiff must show "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." 3 Restatement (Second), Torts 652E; see Goodrich v. WaterburyRepublican-American, Inc., supra.
 "This form of invasion of privacy protects one's interest in not being placed before the public in an objectionable false light or false position, `or in other words, otherwise than as he is.' 3 Restatement (Second), Torts, 652E, comment b. The essence of a false light privacy claim is that the matter published concerning the plaintiff (1) is not true; ibid; and (2) is such a "major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position." Id., comment c. Goodrich v. Waterbury Republican-American, Inc., supra, 131; Jonap v. Silver, supra at 558.
The Restatement of Torts contains this explanation of the requirement of publicity:
 "Publicity" as it is used in this Section differs from "publication," as that term is used . . . in connection with liability for defamation. "Publication," in that sense, is a word of art, which includes any communication by the defendant to a third person. "Publicity," on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge . . .
Comment (c) of § 652D recognizes, however, that not all personal CT Page 10627 and private information is protected from public disclosure. The rule stated in § 652D gives protection only against unreasonable publicity, of a kind highly offensive to the ordinary reasonable person.Perkins v. Freedom of Information Commission, 228 Conn. 158, 172,635 A.2d 783 (1993). Tarka v. Filipovich, 45 Conn. App. 46, 53,694 A.2d 824 (1997).
The plaintiff, however, has pointed to a record that supports a finding that the plaintiff was portrayed in a manner that was highly offensive to an ordinary person, and that the defendant had knowledge of or acted in reckless disregard as to the falsity of the statement made. Honan v.Dimyan, 52 Conn. App. 123, 726 A.2d 613 (1999). While the exact number of co-employees to which the false information was communicated was unknown, and the number of local trucking companies that learned of the defendant's false statement regarding the plaintiff's drug test was not specified, it is specified that information was published to the Connecticut Employment Security Appeals Board. Taking all of these incidents into consideration and interpreting them in a light most favorable to the plaintiff for the purposes of the motion to strike, the court finds that the plaintiff has set forth sufficient facts to sustain a cause of action for false light invasion of privacy.
 III
The defendant has also moved to strike the plaintiff's requests for punitive damages and attorneys fees, as they relate to Count I, wrongful discharge and Count III, invasion of privacy by "false light." The defendant claims that punitive damages are not recoverable against an employer based upon vicarious liability, as the plaintiff has failed to allege that the employer authorized the acts of its employees in this matter. Similarly, the defendant argues, the prayer for relief for attorneys fees should be stricken because no statute has been alleged as the basis for an award of attorneys fees in this case. The plaintiff argues that the Complaint and the Amended Complaint allege malicious conduct justifying an award of punitive damages and that attorneys fees are a component of punitive damages.
"In the United States, the general rule of law known as the American Rule is that a prevailing litigant ordinarily is not entitled to collect a reasonable attorney's fee from the opposing party as part of his or her damages or costs. . . . There are certain exceptions to this rule . . . In the main, exceptions are based upon statutory or contract provisions authorizing the recovery of attorney's fees by a prevailing litigant. . . . Attorney's fees may also be CT Page 10628 awarded as a component of punitive damages." (Citation omitted; internal quotation marks omitted.) Narcisco v. Brown, 63 Conn. App. 578, 580, 777 A.2d 728
(2001); Ralph v. Vogeler, 45 Conn. App. 56, 65, 695 A.2d 1066, cert. denied, 241 Conn. 920, 696 A.2d 342
(1997).
In certain tort actions, punitive or exemplary damages may properly be awarded. In Connecticut, however, recovery is limited to an amount which will serve to compensate the plaintiff to the extent of his expenses of litigation less taxable costs. Vogel v. Sylvester, 148 Conn. 666, 673,174 A.2d 122 (1961). "The flavor of the basic requirement to justify an award of punitive or exemplary damages has been repeatedly described in terms of wanton and malicious injury, evil motive and violence." TriangleSheet Metal Works, Inc. v. Silver, 154 Conn. 116, 127, 222 A.2d 220
(1966); Milwaukee St.P.Ry. Co. v. Arms, 91 U.S. 489, 493,23 L.Ed. 374; Denver R.G.Ry. v. Harris, 122 U.S. 597, 610, 7 S.Ct. 1286,30 L.Ed. 1146; Lake Shore M.S.Ry. Co. v. Prentice, 147 U.S. 101, 107,13 S.Ct. 261, 37 L.Ed. 97; Fay v. Parker, 53 N.H. 342. "The Restatement declares that punitive damages may be awarded only for "outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others." Restatement, 4 Torts 908, comment (b)." Triangle Sheet Metal Works, Inc. v. Silver, supra at 127. The plaintiff has pleaded in each of the three counts of his Complaint and Amended Complaint that the "defendant's actions were conducted with malice. . . ." Again, the court interprets the pleadings in a manner favorable to the plaintiff for the purposes of the motion to strike and concludes that the behavior of the defendant and its agents, servants or employees can be categorized as outrageous conduct with a bad or malicious motive or with a reckless indifference to the interests of the plaintiff.
It is true that in general, absent statutory authority, punitive damages may not be awarded against a principal where that principal's liability is based solely on vicarious liability and the principal has not authorized the agent's actions. See Maisenbacker v. SocietyConcordia, 71 Conn. 369, 380, 42 A. 67 (1899) (finding that "no recovery of exemplary damages can be had against a principal for the tort of an agent or servant, unless the [principal] expressly authorized the act as it was performed, or approved it, or was grossly negligent in hiring the agent or servant"); Gionfriddo v. Avis Rent A Car System, Inc.,192 Conn. 280, 288, 472 A.2d 306 (1984) (recognizing that the common law was reluctant to impose liability upon employers for punitive damages assessed against employees).fn4 Van Eck v. MBNA America Bank, Superior Court, judicial district of New Haven at New Haven, Docket No. 424382 (September 28, 1999, Levin, J.); Kalinowski v. Waddell Reed, Inc., CT Page 10629 Superior Court, judicial district of Waterbury, Complex Litigation Docket, Docket No. X02-CV-97-0146924S (October 14, 1998, Sheldon, J.) (23 Conn.L.Rptr. 172, 173).
While the plaintiff has failed to specifically allege that "the defendant authorized or approved the errant employee's acts or was negligent in hiring him," the plaintiff has identified Ms. Mango, his supervisor, as an employee of the defendant, and he has alleged certain acts by the defendant with sufficient specificity that the court feels that it should be left to the trier of fact to determine whether the defendant Drivers Logistic Services authorized or approved the acts of its employee, the plaintiff's supervisor and not settled by a motion to strike. The court will not strike the prayer for relief containing requests for punitive damages and attorneys fees.
Accordingly, the defendant's motion to strike Counts I and III of the plaintiff's Complaint and Amended Complaint, as well as, the prayer for relief for punitive damages and attorneys fees is hereby denied.
The Court,
By:
Arnold, J